T.C. Memo. 2017-215

UNITED STATES TAX COURT

CARLOS ALAMO, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24174-13L.                    Filed October 31, 2017.

P did not file his 2009 income tax return. R prepared a return and assessed the tax and additions to tax computed by him to be due from P. To collect, R filed a Federal tax lien. P requested a CDP hearing, at the conclusion of which R issued a notice of determination. P petitioned this Court for review. The case was remanded to R for further consideration. R conducted a supplemental CDP hearing and issued a supplemental notice of determination.

<u>Held</u>: R mailed a notice of deficiency to P.

<u>Held</u>, <u>further</u>, P did not properly raise the issue of his underlying tax liability during the CDP hearing.

<u>Held</u>, <u>further</u>, R did not abuse his discretion in sustaining the filing of the Federal tax lien for the 2009 taxable year.

[*2]   Carlos Alamo, pro se.

David Baudilio Mora, Paul Cooperman Feinberg, and Gordon P. Sanz, for respondent.


MEMORANDUM OPINION


LARO, Judge:  In this collection due process (CDP) case, petitioner seeks review, under sections 6320(c) and 6330(d)(1),[1] of respondent's determination sustaining a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL), with respect to his Federal income tax liability for the 2009 taxable year.  The case was submitted fully stipulated under Rule 122.

We must decide three issues in this case.  The first is whether respondent properly issued a notice of deficiency to petitioner; we hold that he did.  The second is whether petitioner properly raised the issue of his underlying tax liability during the CDP hearing; we find that he did not.  The third is whether the Internal Revenue Service (IRS) Office of Appeals settlement officer (SO) who conducted petitioner's initial and supplemental CDP hearings abused her discretion in

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** sustaining the filing of the Federal tax lien for the 2009 taxable year; we find that she did not.

## Background

I.    Overview

The parties submitted this case fully stipulated under Rule 122.  The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein.  Petitioner is a resident of Texas.  This case is appealable to the Court of Appeals for the Fifth Circuit absent stipulation of the parties to the contrary.

II.    Petitioner's Tax Compliance for the 2009 Taxable Year

With respect to petitioner's 2009 taxable year, respondent received a Form 1099-DIV, Dividends and Distributions, and Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions, from TD Ameritrade Clearing, Inc. Respondent also received a Form 1099-INT, Interest Income, from Zone 3 Collision Center, LLC, and Forms 1099-MISC, Miscellaneous Income, from PCS Acquisition Sub, LLC, and Gilbarco, Inc.

Petitioner for the 2009 taxable year made two estimated tax payments of $4,100 each, on April 17 and June 22, 2009.  Respondent's account transcript for petitioner for that year shows that pursuant to an extension of time to file, his

**[*4]** income tax return was due on October 15, 2010. He never filed a return. Indeed, petitioner has not filed a tax return for any of the taxable years 2006 through 2011.

III.    Respondent's Determination and Assessment of Petitioner's Tax Liability

Using the information provided in the Forms 1099, respondent on June 27, 2011, prepared a substitute for return for petitioner's 2009 taxable year. Respondent generated a Letter 2566, Proposed Individual Income Tax Assessment, dated that same day, computing net tax due of $86,651 ($94,851 minus $8,200 for estimated tax payments made), total interest of $5,322.81, a failure-to-file addition to tax of $19,496.47, a failure-to-pay addition to tax of $6,498.82, and a $2,052.59 addition to tax for failure to pay estimated income tax.[2] The Letter 2566 advised petitioner that if he did not file his 2009 tax return within 30 days, respondent would assess the amounts shown. The record does not indicate whether the Letter 2566 was mailed to petitioner. The only relevant entry in respondent's account transcript for petitioner's 2009 taxable year indicates that respondent prepared the substitute for return on July 11, 2011. The discrepancy in the dates remains unexplained.

---

[2]Respondent's Automated Substitute for Return (ASFR) taxpayer delinquency investigation (TDI) record for petitioner shows that the letter package was created on June 14, 2011.

[*5]  According to respondent's ASFR TDI record for petitioner and the account transcript for petitioner's 2009 taxable year, a statutory notice of deficiency was issued on September 20, 2011.  There is no photocopy of the actual notice of deficiency purportedly sent to petitioner.  In the record before this Court, there are two reprints of the notice, one reprinted on February 12, 2015, and the other on August 14, 2015.  The reprints are identical in almost all respects.  They are dated October 3, 2011, and show a deficiency of $94,851, along with a section 6651(a)(1) failure-to-file addition to tax of $19,496.47, a section 6651(a)(2) failure-to-pay addition to tax of $6,498.82, and a section 6654(a) addition to tax of $2,052.59 for failure to pay estimated income tax.  The reprints show petitioner's present address and a tracking number at the top of the first page, which reads: 0071 6176 1836 3379 1592.  The tracking number on the August 14, 2015, reprint has been underlined by hand, and the following tracking number is handwritten above it:  7161 7618 3633 7915 92.  Respondent has provided a U.S. Postal Service (USPS) Form 3877 indicating that a document was sent to petitioner by certified mail from the IRS' Detroit, Michigan, computing center with a tracking number of 7161 7618 3633 7915 9245 and postage of $2.85.  The form bears a Detroit, Michigan, USPS postmark dated October 3, 2011.  There is no USPS tracking information available for any of these numbers.  Respondent's ASFR TDI

[*6] record shows that the notice of deficiency was returned to respondent on November 4, 2011, as unclaimed or refused.

Petitioner did not petition this Court for redetermination of any amounts indicated in the notice of deficiency. On February 7, 2012, respondent closed the tax determination. On February 27, 2012, respondent assessed tax due of $94,851, a failure-to-file addition to tax of $19,496.47, a failure-to-pay addition to tax of $9,964.86, an addition to tax of $2,052.59 for failure to pay estimated income tax, and interest of $7,083.93 and, according to the account transcript for petitioner's 2009 taxable year, issued a corresponding notice to petitioner.

IV.  Respondent's Efforts To Collect the Tax Assessed

A.  Final Notice of Intent To Levy

Petitioner did not pay the assessed liability. On November 1, 2012, respondent issued a Letter 1058, Final Notice: Notice of Intent to Levy and Notice of Your Right to a Hearing (FNIL). The FNIL showed that petitioner owed $133,124.72 and informed him of his right to request a CDP hearing with the IRS Office of Appeals within 30 days of the FNIL's date. The FNIL was mailed in an envelope addressed to petitioner at his present address (the same address as that indicated on the reprinted notices of deficiency), was postmarked November 6, 2012, and bore the tracking number 7011 0470 0003 0295 5961. The envelope

[*7] was returned to respondent unclaimed on December 4, 2012. Petitioner has not contested the FNIL in this case, and we need address it no further.

B.  Notice of Federal Tax Lien Filing

On November 9, 2012, a lien was placed on petitioner's assets because of the balance owed on his account. On November 13, 2012, respondent issued the NFTL to petitioner. The NFTL indicated that the amount of the lien was $125,248.85 and informed petitioner of his right to request a CDP hearing by December 21, 2012, to appeal the collection action and discuss payment method options. The NFTL was addressed to petitioner at his current address and was sent by certified mail.

Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, signed and dated by him on December 19, 2012; respondent received the form on January 3, 2013. Petitioner checked the box on the form indicating that he was challenging the NFTL and requested withdrawal of the lien. He also requested a face-to-face CDP hearing, the audio of which he would record. Petitioner proposed to discuss at the hearing: (1) whether respondent followed proper procedures; (2) his belief that he is not liable for the assessed tax; (3) his belief that he should not be held liable for any penalties; (4) a challenge to the underlying liability, which he claimed he did not have the chance

[*8] to contest earlier; and (5) collection alternatives.  The return address on the

envelope in which the Form 12153 arrived was petitioner's current address.

C.      Collection Due Process Hearing

Petitioner's case was assigned to IRS Office of Appeals SO Liana A. White

in Houston, Texas.  In her initial review on March 28, 2013, SO White surveyed

the matter and determined that petitioner did not qualify for a face-to-face hearing

because he was not current with his Federal tax return filings.

On April 3, 2013, SO White sent a letter to petitioner scheduling a

telephone conference call with him for May 1, 2013, to discuss his case.  The letter

informed petitioner that the IRS Office of Appeals could consider the underlying

tax liability, but only if he did not otherwise have an opportunity to dispute it with

the Office of Appeals or did not receive a statutory notice of deficiency.  The letter

further notified him that for SO White to consider alternative collection methods,

petitioner should submit before the conference a Form 433-A, Collection

Information Statement for Wage Earners and Self-Employed Individuals, and

certain supporting documentation, along with signed tax returns for the 2006,

2007, 2008, 2010, and 2011 taxable years and proof of estimated tax payments for

the 2012 taxable year and the first quarter of 2013.  The letter also explained that

SO White did not recall having any prior involvement with petitioner's tax periods

**[*9]** at issue and that the CDP hearing would determine whether respondent met all the requirements of any applicable law or administrative procedure.

Petitioner responded to SO White by letter dated April 29, 2013, reiterating his request for a face-to-face hearing and noting that the scheduled May 1, 2013, telephone call was not convenient for him. He also stated that he did not receive a deficiency notice for the 2009 taxable year and did not have a previous opportunity to challenge the tax liability. Petitioner went on: "Although I am challenging the liability of the tax, if I do owe the alleged tax and you can provide substantial proof that I do, I would be more than happy to discuss collection alternatives such as installment payments and/or offer and compromise." Petitioner declined to provide the information requested by SO White because he believed each tax year to be separate from the others and wanted to concentrate on 2009 alone.

Petitioner did not call SO White at the scheduled time. By letter dated May 2, 2013, SO White explained that petitioner was not entitled to a face-to-face hearing because he was not in compliance with his filing obligations. SO White reiterated her request that petitioner provide the Form 433-A and supporting documentation as well as any delinquent or corrected tax returns by May 15, 2013. SO White received petitioner's April 29, 2013, letter on May 3, 2013.

[*10] By letter dated May 31, 2013, petitioner repeated his request for a face-to-face hearing. He also requested a copy of the documents that respondent used to arrive at the numbers on which the tax assessment was based.

In a letter dated June 19, 2013, SO White informed petitioner that that letter was his final opportunity to challenge his liability for the 2009 taxable year. She again requested that he provide the delinquent tax returns and informed him that it was his last opportunity to request a collection alternative. SO White reiterated that because of petitioner's nonfiling and failure to submit financial information, she could not grant him a face-to-face hearing. She also noted that she was available by phone to discuss petitioner's case. She offered to process a corrected 2009 individual income tax return if petitioner disagreed with the amount owed. SO White then included the following text in bold type:

> Please send the delinquent Individual Income tax returns for 2006, 2007, 2008, 2009, 2010 and 2011. If you do not agree with the figures for 2009 please submit a corrected return. I have ordered the tax return for 2009 to verify that a Notice of Deficiency was issued to you at your current address. I show this is a good address for you in 2011 when the Notice of deficiency was sent to you per the Services records. Please provide the Form 433-A with all supporting documentation by 7/1/2013. The compliance function followed all legal and procedural requirements regarding the filing of the Notice of Federal Tax lien therefore if I do not receive the requested information by 7/1/2013 I will have no other choice but to issue you a Determination letter sustaining the lien filing.

[*11] SO White concluded by stating that respondent had computed petitioner's 2009 tax owed from amounts reported to respondent on Forms 1099-B and 1099-MISC.

By letter dated July 18, 2013, petitioner restated his request for a face-to-face hearing. He also noted that he did not receive a statutory notice of deficiency for the 2009 taxable year and did not have an opportunity to challenge the tax liability. Petitioner again requested that SO White provide him with substantial proof of his underlying tax liability.

On July 26, 2013, SO White noted in respondent's case activity record that petitioner had failed to submit financial information and delinquent or corrected tax returns. Although she could not obtain a copy of the notice of deficiency, she observed that transcripts showed that it was sent. She added that petitioner was given the opportunity to provide corrected returns and failed to do so and that it appeared to her that he "picks and chooses what he will accept since the L 1058 [the FNIL] went unclaimed to his address of record but received the 3172 [the NFTL] and filed a 12153 [request for a CDP hearing]."

V.    Notice of Determination

On August 30, 2013, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the

[*12] lien filing.  Respondent determined that all legal and procedural requirements had been met regarding the NFTL.  Respondent also determined that SO White had had no prior involvement with the tax period involved.  Respondent noted that petitioner had challenged his underlying tax liability for the 2009 taxable year by stating that he had not received the notice of deficiency.  Respondent observed that petitioner's address of record for 2011 was the same as his current address, at which he had received mail from respondent, although some mail had been returned unclaimed from there.  Respondent's impression was that petitioner was selective about which pieces of mail he wished to receive from respondent.  Respondent added that petitioner was shown in the IRS records to have been at the same address since 2006 and that the account transcript for petitioner's 2009 taxable year shows that the notice of deficiency was issued on September 20, 2011.  Although petitioner raised the issue of abatement of additions to tax, because he did not submit the information requested by SO White, respondent stated, SO White could not address the issue.  Respondent concluded that petitioner did not qualify to have the lien withdrawn or released and that no other challenges were made to the underlying tax liability.  Respondent determined that petitioner was not eligible for collection alternatives because of his failure to comply with filing requirements and to submit financial information.

[*13] Finally, respondent determined that the lien filing balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary.

Petitioner had 30 days to file a petition contesting respondent's determination. See sec. 6330(d)(1). The Court received petitioner's petition on September 30, 2013. Because the envelope in which it was mailed bore a USPS postmark dated September 25, 2013, the petition is treated as timely filed. See sec. 7502(a); sec. 301.7502-1(c)(1), Proced. & Admin. Regs.

VI.    Remand to the IRS Office of Appeals

On August 19, 2015, respondent moved to remand this case to the Office of Appeals to allow the SO to supplement the administrative file to verify that the notice of deficiency was issued properly by respondent and to allow petitioner an additional opportunity to submit an amended return for the 2009 taxable year or a statement of his position on the amount of his income tax liability for that year. On August 26, 2015, this Court granted respondent's unopposed motion and remanded the case to the Office of Appeals to allow it to further consider and verify the underlying liability and the mailing of notices.

By letter dated September 30, 2015, SO White informed petitioner that the Office of Appeals had scheduled a face-to-face supplemental CDP hearing on

[*14] November 12, 2015. The letter notified petitioner that records showed that he had been provided with a copy of the deficiency notice and supporting documentation and that he should be prepared at the face-to-face hearing to provide documentation to support any income and expenses in dispute or not previously considered. SO White requested that petitioner provide these documents to the Office of Appeals by November 2, 2015. SO White encouraged petitioner to prepare an income tax return and applicable schedules for the 2009 taxable year. She indicated that the discussion of collection alternatives would be predicated upon petitioner's compliance with income tax return filing requirements, including submitting tax returns for the 2006 through 2014 taxable years.

When petitioner did not respond to SO White's letter, she performed an internet search and found a telephone number for him. She called him on November 11, 2015, to advise him about the scheduled face-to-face hearing. During the telephone call petitioner told SO White that he was not aware of the hearing and had been hospitalized for 10 days. Petitioner informed SO White that he would not commit to a rescheduled hearing date and requested a letter with a date and time. Accordingly, by letter dated November 13, 2015, SO White rescheduled the hearing for December 2, 2015, and reiterated that petitioner

**[*15]** should be prepared to provide documentation to support any income and expenses in dispute or not previously considered.

By letter dated November 30, 2015, and sent to the Office of Appeals by facsimile on the following day, petitioner explained his delay in responding to SO White was by reason of his own hospitalization, followed by family medical emergencies and bereavement. He requested that SO White continue investigating the IRS records and mail him the results of the investigation. Petitioner expressed his belief that a face-to-face hearing would not be productive until he received proof that the IRS had created the notice of deficiency and mailed it to him.

Petitioner did not appear for the scheduled supplemental CDP hearing on December 2, 2015. By letter dated December 3, 2015, SO White informed him that the 2009 deficiency notice was provided to him by respondent's counsel but that she was sending another copy of the documents he had requested. SO White rescheduled the face-to-face supplemental CDP hearing to January 7, 2016, and requested that petitioner provide by December 29, 2015, documentation supporting any income and expenses in dispute and not previously considered.

By letter dated December 30, 2015, petitioner refused to appear for the rescheduled hearing, stating that when he received the copy of the deficiency notice that SO White mailed with her previous letter, it was the first time he had

[*16] seen the document. Petitioner reiterated his belief that the IRS had never created the notice or mailed it to him. He further asserted that the copies of the notice that SO White provided to him were incomplete and had been saved on the Government's computers and never actually printed. He noted that the USPS did not show any tracking information for the tracking number indicated on the reprinted notice of deficiency.[3] Accordingly, because of his belief that the IRS never created or sent him a deficiency notice for the 2009 taxable year, petitioner requested abatement of tax and additions to tax without a face-to-face hearing.

On February 5, 2016, respondent issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the lien filing. Respondent determined that all legal and procedural requirements had been met regarding the NFTL. Respondent noted that the Office of Appeals believed it had satisfactorily supplemented the administrative file with verification that a statutory notice of deficiency was properly issued by the IRS. Respondent also observed that the Office of Appeals afforded petitioner three separate opportunities to submit documentation concerning the underlying tax liability but that petitioner declined to participate or provide any information that

---

[3]Deborah L. Ross, an IRS Office of Appeals team manager, contacted the USPS on January 22, 2016, and was informed that tracking numbers are active for 60 days, archived for up to two years, and then recycled.

[*17] could facilitate correcting or adjusting his tax liability. Because petitioner declined to provide the Office of Appeals with any information to dispute his underlying tax liability during both the initial and the supplemental hearing, respondent concluded that the liability was correct and the assessment too was correct and valid.

## Discussion

### I. Overview

#### A. Collection of Unpaid Tax Liabilities

The Secretary has collection authority over taxes imposed by the Code. Sec. 6301. One of the tools in the Government's purview, if a taxpayer liable for a tax neglects or refuses to pay it, is a lien in favor of the United States upon all property and rights to property belonging to that taxpayer. Sec. 6321. The lien continues until the liability is satisfied or the lien becomes unenforceable by reason of lapse of time. Sec. 6322. The lien is not valid against any purchaser, security interest holder, mechanic's lienor, or judgment lien creditor until notice of the lien has been properly filed. Sec. 6323(a).

A taxpayer must be notified in writing of the filing of a notice of lien under section 6323. Sec. 6320(a)(1). Section 6320(a) elaborates on those notice requirements, and section 6320(b) gives a taxpayer the right to a fair CDP hearing

[*18] before an impartial officer of the IRS Office of Appeals who has had no prior involvement with respect to the unpaid tax. Subsections (c), (d) (other than paragraph (3)(B) thereof), (e), and (g) of section 6330 govern the conduct of this hearing and any subsequent review. Sec. 6320(c). Thus, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax, including (1) appropriate spousal defenses, (2) challenges to the appropriateness of collection actions, and (3) offers of collection alternatives. Sec. 6330(c)(2)(A). The taxpayer, however, may not challenge the existence or amount of the underlying tax liability unless he did not receive a statutory notice of deficiency for that liability or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B). The Appeals officer's determination must take into account all of the above, as well as whether any proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

B. Review of Collection Actions

Within 30 days of a CDP determination by the IRS Office of Appeals, a taxpayer may petition this Court for review of that determination. Sec. 6330(d)(1).

[*19] We review the determination de novo only where the validity of the underlying tax liability was properly at issue at the hearing. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Otherwise, where the taxpayer's underlying liability is not properly at issue, we review the Government's decision for abuse of discretion only. Id. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Venhuizen v. Commissioner, T.C. Memo. 2012-270, at *12.

II.     Whether Respondent Properly Mailed a Notice of Deficiency to Petitioner

The threshold question in this case is one over which the parties' dispute is the most vociferous:  whether respondent created and mailed to petitioner the notice of deficiency upon which respondent's tax assessments and proposed collection action are based.

A.     Legal Background

Section 6212 provides that a notice of deficiency must be sent by certified or registered mail to the taxpayer at his last known address. It is sufficient that the Commissioner have mailed the notice; it is not necessary that the taxpayer have received it. See Keado v. United States, 853 F.2d 1209, 1211-1212 (5th Cir. 1988).  If the Commissioner's assessment of a taxpayer's income tax liability is

[*20] not preceded by a deficiency notice as required by section 6213(a), then the assessment is invalid, as is any lien based thereon.  Hoyle v. Commissioner, 131 T.C. 197, 205 (2008).  Moreover, in such an instance, the taxpayer's opportunity in a CDP hearing to dispute the underlying tax liability does not cure the invalid assessment.  Freije v. Commissioner, 125 T.C. 14, 36 (2005).

The Commissioner bears the burden of proving by competent and persuasive evidence that he properly mailed the notice of deficiency.  Coleman v. Commissioner, 94 T.C. 82, 90 (1990); August v. Commissioner, 54 T.C. 1535, 1536-1537 (1970).  A Form 3877 reflecting USPS receipt represents direct documentary evidence of the date and the fact of mailing.  Coleman v. Commissioner, 94 T.C. at 90.  It also can reflect the Commissioner's compliance with established IRS procedures for mailing deficiency notices.  Id.  A failure to comply with the Form 3877 mailing procedures is not fatal if the evidence adduced is otherwise sufficient to prove mailing.  Id. at 91; see also Kaebel v. Commissioner, T.C. Memo. 2017-37, at *14 ("While not sufficient to create a presumption of official regularity, the incomplete Form 3877 serves as evidence that the notice of deficiency was mailed to * * * [the taxpayer].").

**[*21]** B.     <u>The Parties' Arguments</u>

Petitioner argues that before the Commissioner can assess or collect a tax deficiency, he must send a notice of deficiency to the taxpayer by certified or registered mail. <u>See</u> sec. 6212(a); <u>see also</u> <u>Keado</u>, 853 F.2d at 1211-1212. Petitioner further argues that the burden of establishing the existence of a notice of deficiency and the date of its mailing is upon the Commissioner. <u>See</u> <u>Pietanza v. Commissioner</u>, 92 T.C. 729, 736-737 (1989), <u>aff'd</u>, 935 F.2d 1282 (3d Cir. 1991). Petitioner's position is that there are multiple inconsistencies and omissions in the evidence surrounding the deficiency notice's mailing and that respondent cannot meet his burden of proof on that point. Petitioner points to several such purported inconsistencies: (1) there is a mismatch between the tracking numbers indicated on the reprinted notice of deficiency and the Form 3877; (2) the fact that the notice was purportedly created at the IRS office in Holtsville, New York, but mailed out of the Detroit, Michigan, office; (3) the reprinted notice was incomplete because it did not include a summary of the deficiency's computation or explanation of the adjustments; (4) the Form 3877 does not indicate what particular item had been mailed or the tax year to which it related; (5) the reprinted notice of deficiency does not include petitioner's name, and even if the notice had been delivered to

[*22] petitioner's address, petitioner could not have identified that it was directed to him and it would have been illegal for him to open it.

Citing Massie v. Commissioner, T.C. Memo. 1995-173, 1995 WL 225549, at *3, aff'd, 82 F.3d 423 (9th Cir. 1996), respondent maintains that petitioner's claim that he did not receive the notice of deficiency is insufficient to disprove that the notice was mailed. Respondent admits that the Form 3877 that has been entered into the record of this case lacks all the features necessary for it to be considered properly prepared for purposes of establishing a presumption of official regularity, see Hoyle v. Commissioner, 131 T.C. at 203, because it was not signed by the USPS official who received the document and was not signed by the person who issued the notice of deficiency, cf. Meyer v. Commissioner, T.C. Memo. 2013-268, at *22-*25. However, respondent argues, the Forms 3877 may be used along with other evidence to establish the deficiency notice's timely mailing. See Coleman v. Commissioner, 94 T.C. at 91. Thus, respondent points to the reprinted notice of deficiency and the account transcript for petitioner's 2009 taxable year, which show the assessment of petitioner's outstanding income tax liability after the date the deficiency notice was issued. Cf., e.g., Portwine v. Commissioner, T.C. Memo. 2015-29, aff'd without published opinion, 668 F. App'x 838 (10th Cir. 2016); Jordan v. Commissioner, T.C. Memo. 2011-243.

[*23] Respondent also disputes the discrepancies claimed by petitioner. First, respondent argues that the notice of deficiency in the case record is a reprint of the original and the mismatch between the numbers is due to the reprinting; he emphasizes that the numbers match except for their first two and last two digits. Second, respondent argues that because the IRS occasionally prepares documents in one location and for efficiency mails them from another, the mismatch in cities is not significant. Moreover, respondent points out, the amount of time between the creation of the substitute for return and the deficiency notice's date suggests that the notice could have been mailed from a location different from where it was created. Third, respondent contends that the reprinted notice of deficiency includes an attachment showing how petitioner's deficiency and additions to tax for the 2009 taxable year were calculated. Fourth, respondent maintains that, while the Form 3877 was not properly prepared, in conjunction with the other evidence in the record it is sufficient to show the mailing of the deficiency notice. Fifth, respondent argues that petitioner's argument about the absence of his name from the address line of the reprinted notice of deficiency is conjecture, because petitioner did not establish that the original deficiency notice lacked his name, nor is there any evidence that respondent used a windowed envelope in mailing the notice such that the address lines on the notice would have been visible.

**[*24]** C.     Mailing of the Notice of Deficiency

Notwithstanding respondent's disorganized recordkeeping as to the tax account for petitioner for 2009, we find that respondent has carried his burden of proving that he mailed a deficiency notice to petitioner.

The account transcript for petitioner's 2009 taxable year and respondent's ASFR TDI record both show that a statutory notice of deficiency was generated on September 20, 2011. Respondent has also provided two reprints of the deficiency notice, each dated October 3, 2011. These reprints show petitioner's address, which was his last known address at that time and is the address he uses presently. Respondent further has provided a Form 3877 showing that an item was mailed to petitioner on October 3, 2011, which is the date shown on the reprinted notice of deficiency, and bearing a Detroit, Michigan, USPS postmark dated that same day.

The situation with the tracking numbers, of which there are three as noted in the background summary above, admittedly is peculiar. However, the similarity of the numbers suggests that the differences are the result of carelessness or a computer error rather than a bumbling coverup on respondent's part, as petitioner seems to suggest. The three tracking numbers are as follows, with the identical digits aligned vertically:

[*25]        Source                          Number

| Source | Number |
| --- | --- |
| Reprinted deficiency notices | 00 7161 7618 3633 7915 92 |
| Handwritten on one of the reprints | 7161 7618 3633 7915 92 |
| Form 3877 | 7161 7618 3633 7915 9245 |

We agree with respondent that the similarity among these numbers is not coincidental. The confluence of the date of record entries and the reprinted notice of deficiency, the close similarity of the tracking numbers, and the lack of any other correspondence around the same time from respondent to petitioner suggest that the document that was mailed on October 3, 2011, as evidenced by the Form 3877, was indeed the notice of deficiency.

But there is more evidence persuading us that respondent did mail the notice of deficiency. Respondent closed the tax determination on February 7, 2012, and assessed the tax due and additions to tax on February 27, 2012. The last date indicated on the reprinted deficiency notice for petitioner to file a petition with this Court was January 3, 2012. The timing of respondent's assessment of tax against petitioner coincides with the expiration of the 90-day window to petition this Court for redetermination of the determination in the notice of deficiency. See sec. 6213(a), (c). But what is perhaps most indicative of the deficiency notice's mailing is respondent's ASFR TDI record showing that the notice was returned to respondent on November 4, 2011, as unclaimed or refused. Logic dictates that an

[*26] item cannot be returned as unclaimed unless it was first mailed. Moreover, as the case record shows, petitioner's acceptance of mail from respondent historically has been spotty. For instance, the FNIL was returned to respondent unclaimed, but the NFTL on which this case is based was delivered successfully to petitioner. While there is no evidence to establish any deliberate refusal of delivery of the notice of deficiency on petitioner's part, cf. Sego v. Commissioner, 114 T.C. 604, 611 (2000) ("[T]axpayers cannot defeat actual notice by deliberately refusing delivery of statutory notices of deficiency."), he cannot use the fact that the notice of deficiency went unclaimed to later assert that the notice was never mailed to him, see Massie v. Commissioner, 1995 WL 225549, at *3.

We do not think the purported inconsistencies pointed out by petitioner to be relevant or significant. We have already addressed the mismatch among the tracking numbers on the reprinted deficiency notice and the Form 3877. It is not significant that the deficiency notice listed a Holtsville, New York, address at its top but was mailed from Detroit, Michigan; IRS operations are national in scope, and documents can be prepared in one location and printed in another or mailed between locations before being sent to the taxpayer. Petitioner's argument about whether the notice included a statement showing how the deficiency was computed is not relevant because it has no bearing on whether the notice was

[*27] mailed. As to the Form 3877, respondent admitted that it was not complete, but taken together with all the other evidence it is sufficient to show that the notice of deficiency was mailed. Finally, petitioner's contention that the absence of his name from the reprinted notice means that it could not have been delivered to him is inapposite; there is no evidence on whether the original notice included his name and whether it was mailed in an opaque envelope or one with a window.

Considering all the evidence before us, we conclude that respondent mailed a notice of deficiency to petitioner. See Coleman v. Commissioner, 94 T.C. at 91.

III.    Whether Petitioner Properly Raised the Issue of His Tax Liability

We have found that respondent mailed a notice of deficiency to petitioner, and so the assessment of income tax and additions to tax against him is valid. Cf. Hoyle v. Commissioner, 131 T.C. at 205. However, while it is sufficient for the Commissioner to have mailed the notice of deficiency for the assessment to be valid, section 6330(c)(2)(B) provides an additional right to the taxpayer. See Freije v. Commissioner, 125 T.C. at 36 (characterizing section 6330 as "a measure intended to expand taxpayers' rights in collection actions"). That statute allows a taxpayer to challenge the underlying liability if he "did not receive any statutory notice of deficiency for such tax liability". Sec. 6330(c)(2)(B) (emphasis added); see also sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. ("Receipt of a

[*28] statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency."). Thus, under section 6330(c)(2)(B) the receipt of the deficiency notice, not its mailing, is the relevant event. See, e.g., Campbell v. Commissioner, T.C. Memo. 2012-82, 2012 WL 967660, at *2. Respondent does not dispute that petitioner did not receive the deficiency notice, nor does he dispute that petitioner was entitled to raise the issue of his underlying tax liability at his CDP hearing. Therefore, respondent is deemed to have conceded these points, see Thiessen v. Commissioner, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned."), and we turn to whether petitioner properly raised the issue of his tax liability in the CDP proceedings.

A.    The Parties' Arguments

Respondent admits that petitioner stated in his request for a CDP hearing that he does not believe that he owes the underlying tax liability. However, respondent argues that petitioner is precluded from disputing the underlying tax liability because he failed to raise properly the merits of that liability as an issue during the CDP hearing. See Giamelli v. Commissioner, 129 T.C. 107, 112-115 (2007).

[*29] Petitioner contends that he repeatedly raised the merits of the underlying tax liability during the CDP proceedings. He emphasizes that he notified SO White several times that he never received a notice of deficiency. Petitioner's position is that his assertion to SO White that he did not receive the notice is itself a challenge to the merits of the underlying liability and represents an issue at the core of the assessment's validity. Petitioner further argues that it is not material whether he provided a completed 2009 return, or other statement concerning his income tax liability for that taxable year, to SO White. Petitioner reiterates that he believes the key issue before this Court is whether respondent created and properly mailed to him a notice of deficiency.

B. Challenge to the Underlying Tax Liability

We have already determined that respondent did mail a notice of deficiency to petitioner. But it is also true that because petitioner did not receive the notice, he was entitled to raise the issue of the underlying liability at his CDP hearing. See sec. 6330(c)(2)(B). Petitioner errs, however, by contending that he was not required to provide a completed 2009 income tax return or any other documentation to the IRS Office of Appeals to contest his income tax liability.

It is insufficient for a taxpayer simply to state to the Office of Appeals that he is challenging the underlying tax liability in a CDP hearing. He must also

**[*30]** present some evidence with respect to that issue. Section 301.6320-1(f)(2),

Q&A-F3, Proced. & Admin. Regs., provides:

> In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing. An issue is not properly raised if the taxpayer fails to request consideration of the issue by Appeals, or if consideration is requested but the taxpayer fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence.

See also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. The record in this case shows that petitioner was given multiple opportunities to provide evidence of what he believed to be his correct tax liability and refused. In the original CDP proceedings SO White made several written requests to petitioner for a Form 433-A, financial documentation, and a corrected 2009 income tax return, all to no avail. In the supplemental CDP proceedings SO White requested thrice that petitioner submit documentation concerning his underlying tax liability, again to no avail. And in both CDP proceedings SO White scheduled and rescheduled multiple telephone conference calls and face-to-face meetings with petitioner, in all of which the latter refused to participate.

SO White afforded petitioner a more than reasonable opportunity to present evidence relating to his underlying tax liability. A taxpayer may not claim to

[*31] challenge the underlying tax liability in a CDP hearing and then refuse to cooperate with the Office of Appeals in attempting to establish that liability.  In previous cases, we have found against taxpayers where they stated that they were challenging the underlying tax liability in a CDP hearing but failed to provide to the Office of Appeals any evidence on that issue.  See, e.g., Snodgrass v. Commissioner, T.C. Memo. 2016-235; Stevenson v. Commissioner, T.C. Memo. 2013-284.  In short, intransigence has no reward.  We agree with respondent that petitioner did not properly raise the issue of his underlying tax liability for the 2009 taxable year during either his original or his supplemental CDP hearing.

IV.    Whether the SO Abused Her Discretion

Because petitioner's underlying tax liability is not properly at issue, we review respondent's decision for abuse of discretion only.  See Goza v. Commissioner, 114 T.C. at 181-182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Woodral v. Commissioner, 112 T.C. at 23; Venhuizen v. Commissioner, at *12.  In a CDP hearing the SO must (1) properly verify that the requirements of any applicable law or administrative procedure were met, (2) consider all relevant issues raised by the taxpayer, and (3) consider whether the proposed collection action balanced the need for efficient collection of taxes with the taxpayer's

[*32] legitimate concern that the action be no more intrusive than necessary. Sec. 6330(c)(3). We find that SO White did all of these things and thus did not abuse her discretion in sustaining the Federal tax lien filing for the 2009 taxable year.

A.  The Parties' Arguments

Petitioner asserts that SO White's determination that the requirements of any applicable law or administrative procedure had been met in his case rested on erroneous findings of fact. Petitioner argues that the copy of the deficiency notice provided by the Government does not include his name and is incomplete because it does not show how the deficiency was computed, nor does it include an explanation of the adjustments. Petitioner also points out the discrepancy among the tracking numbers in respondent's records. Thus, petitioner would have us hold that SO White abused her discretion in neglecting to verify the valid issuance of a notice of deficiency and its proper mailing. Petitioner maintains that SO White should not have concluded that a valid deficiency notice was sent to him and thus should have determined not to proceed with the collection action.

Respondent maintains that SO White did not abuse her discretion. First, respondent argues that SO White verified that a valid notice of deficiency was sent to petitioner at his last known address, see Hoyle v. Commissioner, 131 T.C. at 200-203, by reviewing the notice of deficiency, the account transcript for

[*33] petitioner's 2009 taxable year, and the copy of the Form 3877. Second, respondent asserts that SO White's denial of a face-to-face hearing during the original CDP proceedings was not an abuse of discretion because petitioner refused to provide any requested information. Respondent adds that SO White did offer a face-to-face hearing during the supplemental CDP proceedings. Ultimately, respondent contends, it was not an abuse of discretion for SO White to uphold the proposed collection action because petitioner did not participate in the CDP hearing and did not provide any requested financial information.

### B.     Abuse of Discretion

We agree with respondent that there was no abuse of discretion in sustaining the Federal tax lien filing for the 2009 taxable year. Respondent's case activity record shows that SO White documented her review of petitioner's case and her correspondence and conversation with petitioner. The evidence and the notice of determination itself demonstrate that SO White (1) properly verified that the requirements of any applicable law or administrative procedure were met, (2) considered all relevant issues raised by petitioner, and (3) considered whether the proposed collection action balanced the need for efficient collection of taxes with petitioner's legitimate concern that the action be no more intrusive than necessary. See sec. 6330(c)(3).

[*34] While SO White's review of the deficiency notice during the initial CDP hearing may have been deficient, any possible defect was remediated upon remand from this Court during the supplemental CDP hearing. SO White relied on multiple items of evidence in respondent's records to establish that the notice of deficiency was mailed. She reviewed the same evidence as we did when we found that respondent mailed the deficiency notice.

We also are not persuaded by petitioner's arguments that the absence of his name from the reprinted notice of deficiency makes it invalid, as does the absence of computations of the deficiency and an explanation of the adjustments. The reprinted notice of deficiency is a computer-generated copy, not a photocopy of the original notice. At any rate, the Form 3877, the tracking number on which, we have found, correlates with that on the notice of deficiency, does include petitioner's correct name and address. Further, we cannot accept petitioner's argument that the notice of deficiency was mailed in an envelope with a window for the address as opposed to a fully opaque envelope. There is no evidence in the record about the types of envelope in which respondent mails notices. And surely petitioner could not claim to have specific knowledge that the notice of deficiency for the 2009 taxable year was placed in a windowed envelope, because that would discredit his position that he never received the notice.

[*35] As far as the absence of deficiency computations and an explanation of adjustments made, the reprinted deficiency notice indeed does not include these, although we note that it includes the following line: "The enclosed statement shows how we figured the deficiency." The record before us includes a copy of the proposed individual income tax assessment dated June 27, 2011, which does explain respondent's computations of petitioner's income tax deficiency and additions to tax. The record does not show whether this document was mailed to petitioner; however, because it was entered into the record in this case before it was remanded, petitioner did have actual notice at the supplemental CDP hearing of respondent's computation of his tax liability.

Even if the notice of deficiency had been mailed without an explanation of respondent's computation of petitioner's deficiency and additions to tax, this does not invalidate it. Section 7522(a) requires that a deficiency notice "describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to tax, and assessable penalties included in such notice." However, "[a]n inadequate description * * * shall not invalidate such notice." Sec. 7522(a). This Court has held that a deficiency notice is valid if it objectively places a reasonable taxpayer on notice that the Government has determined a deficiency in tax for a particular year and amount. Dees v. Commissioner, 148

[*36] T.C. \_\_\_, \_\_\_ (slip op. at 8-9) (Feb. 2, 2017). The reprinted notice of deficiency clearly does this, and thus the potential absence of explanatory computations does not invalidate it.

Furthermore, there generally is no abuse of discretion in an SO's refusal to grant a face-to-face hearing during CDP proceedings where the taxpayer fails to provide requested financial information and delinquent tax returns. See, e.g., Klingenberg v. Commissioner, T.C. Memo. 2012-292, at *17, aff'd without published opinion, 670 F. App'x 510 (9th Cir. 2016). Because CDP hearings are informal administrative proceedings, they have no particular format and may be face-to-face or conducted by written or oral communication between an Appeals officer and the taxpayer. Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Regardless, because SO White did offer petitioner several opportunities for a face-to-face hearing in the supplemental CDP proceedings, there is no colorable claim that she abused her discretion in this respect.

There also was no abuse of discretion in respondent's determination that petitioner is not entitled to a collection alternative, because petitioner did not provide a completed Form 433-A or supporting financial information, nor was he in compliance with Federal tax laws, having not filed income tax returns for the 2006 through 2014 taxable years. See, e.g., Coleman v. Commissioner, T.C.

[*37] Memo. 2010-51, 2010 WL 985291, at *4 ("This Court has consistently held, as have other courts, that a determination that a taxpayer is not entitled to a collection alternative does not constitute an abuse of discretion if the taxpayer did not provide financial information during the administrative hearing and was not currently in compliance with Federal tax laws, i.e., had not filed all required tax returns."), aff'd, 420 F. App'x 663 (8th Cir. 2011); see also sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. ("[T]he IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax[.]").

On the basis of the record in this case, we can find no defect in respondent's determination to sustain the filing of the Federal tax lien. SO White and the IRS Office of Appeals did not act arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. at 23. Petitioner refused to cooperate with SO White, who offered him multiple opportunities to provide the requested information and have a face-to-face hearing. A taxpayer may not refuse to deal with the IRS Office of Appeals in a CDP proceeding and then argue that it abused its discretion in issuing an unfavorable determination. Accordingly, we conclude that respondent did not abuse his discretion in upholding the lien filing.

[*38] V.    Conclusion

We have determined that respondent properly mailed a notice of deficiency to petitioner.  We also found that petitioner failed to properly raise the issue of his underlying tax liability during the CDP hearing.  And, finally, we concluded that the IRS Office of Appeals did not abuse its discretion in sustaining the filing of the Federal tax lien for the 2009 taxable year.

If petitioner believes that he does not owe the tax assessed by respondent and is able and willing to provide competent evidence to that effect, he may pay the full amount assessed and submit a claim for refund or credit.  Secs. 6402(a), 6511; Flora v. United States, 357 U.S. 63, 75 (1958).  If the claim is denied, then petitioner may sue for refund, secs. 7422(a), 6532(a)(1), in Federal District Court or the U.S. Court of Federal Claims, 28 U.S.C. secs. 1346(a)(1), 1491(a)(1) (2012).

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

[*39] To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.