# United States Tax Court

T.C. Memo. 2025-107

AVALON HOME HEALTH, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 19369-24L.                 Filed October 16, 2025.

————

*Christopher P. Housh*, for petitioner.

*Julie Vandersluis Skeen* and *Grant S. Spicer*, for respondent.

MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case, petitioner, Avalon Home Health, Inc., timely filed a Petition under section 6330(d)(1),[1] challenging a Notice of Determination Concerning Collection Actions Under Sections 6320 or 6330 of the Internal Revenue Code (NOD) issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals). The NOD sustains a proposed levy as it relates to the collection of an unpaid income tax liability for petitioner's 2014 tax year.

Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that it was not an abuse of discretion for Appeals to sustain the levy. The IRS's actions with respect to

—————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[*2] petitioner's CDP request were far from a model of good government, and the Motion's attempts to gloss over them are unavailing. This Court will remand the case to Appeals for consideration of petitioner's request for an installment agreement.

*Background*

The following facts are based on the parties' pleadings and Motion papers, including the Exhibits attached thereto, as well as the administrative record. *See* Rule 93. The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). When the Petition was filed, petitioner's place of business was in California.

I.      *Before the CDP Request*

Petitioner filed tax returns for each of tax years 2014, 2015, 2016, and 2018. Petitioner's return for the 2014 tax year was filed on February 26, 2016. On March 21, 2016, the IRS assessed $5,880 of tax with respect to the return, additions to tax under sections 6651(a)(1) and (2) and 6654 of $1,323, $382, and $106, respectively, and statutory interest of $203. Additional amounts under section 6651(a)(2) and/or amounts of statutory interest with respect to the 2014 tax year were also assessed on February 26 and May 21, 2018.

On June 11, 2018, a Notice of Deficiency with respect to petitioner's 2014 tax year was sent via certified mail. The certified mail list, in addition to bearing petitioner's mailing address and the certified mail tracking number reflected on the Notice of Deficiency, shows the total number of items listed and received. In addition to being initialed and dated next to "Total Number of Pieces Listed by Sender," the list, next to "Postmaster and Date," has another set of initials and a stamp indicating the postal service station and a date of June 11, 2018. According to an IRS transcript of petitioner's addresses, the address reflected on the Notice of Deficiency and on the certified mail list was used by petitioner from approximately February or March of 2016 until approximately October 2018. Nevertheless, the Notice of Deficiency was returned stamped "Return to sender / Attempted – Not Known / Unable to Forward."

On November 26, 2018, the IRS assessed additional tax of $400,828 based on the Notice of Deficiency, as well as an additional amount of $100,207 under section 6651(a)(1) and an accuracy-related

[*3] penalty under section 6662 of $80,166. Case activity notes indicate that Notice CP210, which is not in the administrative record, was issued on the same day.

On April 16, 2019, the IRS mailed Letter 3172, Notice of Federal Tax Lien and Your Right to a Hearing, with respect to liabilities for tax years 2013, 2014, 2015, and 2016, to petitioner via certified mail. Case activity notes indicate that a copy was also sent to a representative for petitioner. For the 2014 tax year, Letter 3172 reflects an assessment date of March 21, 2016, but a lien amount of $590,906, consistent with all the assessments up to the date of the letter, including those following from the Notice of Deficiency. The letter explains: "You have a right to a hearing with us to appeal this collection action and to discuss your payment method options." However, petitioner did not request a hearing in response to Letter 3172. Petitioner explains that "Petitioner has no recollection of receiving the [letter] and was not represented by" the representative to whom a copy of Letter 3172 was sent "at that time."

Petitioner's address reflected on Letter 3172 is also on the certified mail log, U.S. Postal Service (USPS) Form 3877, Firm Mailing Book For Accountable Mail, indicating its mailing. And according to an IRS transcript of petitioner's addresses, petitioner used that address from approximately October 2018 until approximately October 2020. The address also appears on petitioner's tax return for the 2018 tax year filed on September 26, 2019, as does the name of the representative to whom the IRS indicates a copy of Letter 3172 was mailed. However, petitioner states that although all of the documents reflect Suite 101 as the address for petitioner, the "public record show[s] that the business was in Suite 203, or Suite 106 during the period of 2010 through 2025." Although the IRS transcript does show petitioner's address as Suite 106 starting in approximately 2020, it never reflects Suite 203, and it reflects completely different addresses for petitioner before approximately October 2018 and after approximately October 2024.

In addition to reflecting petitioner's mailing address shown on Letter 3172, USPS Form 3877 bears the certified mail tracking number provided on Letter 3172. Next to "Affix Stamp Here (*if issued as a certificate of mailing . . .*)" and "*Postmark and Date of Receipt*" it is stamped with USPS and a date of April 16, 2019, accompanied by a signature. However, the page of USPS Form 3877 provided by respondent (which is attached to the Motion but not included in the administrative record) is one of 221 pages and includes only the number

**[*4]** of items provided by the IRS (both as listed on the page and in total) but not the numbers received by the postal service.

An additional amount under section 6651(a)(2) and additional statutory interest were assessed on May 18, 2020. On August 16, 2021, the IRS issued petitioner Letter 11, Notice of Intent to Levy and Your Collection Due Process Right to a Hearing (Levy Notice). The Levy Notice reflects $908,872 owed with respect to the 2014 tax year.

## II.  *CDP Request*

On August 25, 2021, the IRS received petitioner's Form 12153, Request for a Collection Due Process or Equivalent Hearing, for tax years 2014, 2015, 2016, and 2018. The Form 12153 requests an installment agreement as a collection alternative and states:

> The taxpayer believes there are better avenues to resolve the liability than enforced collection activity. The taxpayers dispute the 2014 tax liability as they were not provided the opportunity to challenge the removal of expenses on the return and are in the process of doing an audit reconsideration request.[2]

## III.  *Payments with Respect to 2014 Tax Year Liability*

With respect to its 2014 tax year liability, petitioner paid $10,000 in August 2021 and generally paid $5,000 per month from September 2021 through July 2025.

## IV.  *Interactions Between Petitioner and IRS*

Petitioner's case was assigned to four consecutive settlement officers (SOs) during its more than three-year pendency with Appeals. The SOs all determined that they had no prior involvement with petitioner for the types of tax and tax years associated with the case.

### A.  *First SO*

The first SO (First SO) determined that there was a balance due only for tax year 2014, as the amounts due for tax years 2015, 2016, and 2018 had been paid. She mailed petitioner a letter dated November 1,

---

[2] Petitioner's representative has intermittently referred to petitioner's executives as the taxpayers in this case.

[*5] 2021, acknowledging receipt of the CDP hearing request and scheduling a telephone CDP hearing for January 12, 2022. The letter also requested that petitioner provide a completed Form 433–B, Collection Information Statement for Businesses, and financial information necessary for consideration of an installment agreement.

On January 11, 2022, the First SO received a fax from petitioner with an incomplete Form 433–B and some, but not all, of the requested financial information. Because of an apparent mixup, the hearing scheduled for January 12, 2022, did not occur, and on January 13, 2022, the First SO mailed petitioner a letter requesting contact and complete financial information by January 27, 2022. A hearing was eventually rescheduled for February 9, 2022.

On February 9, 2022, the First SO and petitioner's representative attended the rescheduled CDP hearing. The First SO requested that the representative fax to her a copy of the request for audit reconsideration that the representative indicated petitioner had submitted. The First SO also pointed out that the financial information submitted was still incomplete and requested that petitioner submit by March 3, 2022, the following: a completed Form 433–B; 12 months of current bank statements from each bank and account; 3 months of current utility bills; credit card statements; a copy of petitioner's lease; a list of accounts receivable; proof of liabilities, assets, and expenses; and any other supporting documentation. Noting that the previously submitted Form 433–B did not support petitioner's ability to pay the proposed installment agreement payment amount, the First SO also requested that, if that continued to be the case, petitioner submit a letter outlining the indicated plan of eliminating pay to petitioner's key employees in order to afford the proposed payments.

The First SO subsequently received the requested financial information accompanied by a letter, not included in the administrative record, apparently explaining that petitioner was willing to pay $5,000 per month until the audit reconsideration request had been reviewed, with the understanding that the overpayment would be refunded to petitioner, with interest, when the audit reconsideration was completed. The First SO forwarded the relevant information to the Automated Collection System (ACS) Support unit and the Memphis audit reconsideration unit, asking the latter for a response as to whether petitioner's request was under review. At petitioner's representative's prompting, the First SO continued to check in with the audit reconsideration unit as time passed, to no avail.

**[\*6]** The First SO was informed by the ACS Support unit that, according to the information petitioner provided, petitioner could not pay the 2014 tax liability, but that petitioner had failed to provide additional information requested. The First SO forwarded this information to petitioner with a cover letter dated June 28, 2022, indicating that because of the failure to provide requested information, an installment agreement could not be granted. The letter invited petitioner to indicate any disagreement by July 28, 2022, and noted that the First SO would consider any response along with ACS's review before making a decision. It warned that nonresponse could lead to a conclusion that petitioner did not wish to proceed, followed by a determination.

In the meantime, the First SO obtained the certified mail list for the Notice of Deficiency issued to petitioner for the 2014 tax year and verified that it was sent to petitioner's last known address. However, she subsequently concluded that because Form 4549, Income Tax Examination Changes, was not signed, petitioner was entitled to dispute the underlying liability in the CDP hearing.

On July 6, 2022, petitioner's representative responded to the First SO by faxing the information that the ACS Support unit had requested. On an August 17, 2022, call, the First SO instructed petitioner's representative to resubmit petitioner's audit reconsideration request by certified mail, given that petitioner's representative had no proof of a prior submission.[3] The First SO and petitioner's representative also discussed the fact that petitioner did not appear to be able to pay the balance due. With respect to the possibility of an installment agreement, the First SO's notes reflect that petitioner's executives planned to reduce their pay in order to be able to make $5,000 monthly payments "if placed in an [installment agreement]" and that a followup call was scheduled for August 24, 2022, "to discuss if the [taxpayer] could be placed in an [installment agreement]." According to the First SO's notes, on August 24, 2022, she "advised [petitioner's representative] to continue to have the Officers make voluntary payments towards the balance due." The First SO's notes for both calls reflect no outstanding information required from petitioner. And petitioner indicates: "Regarding the discussion about the payment agreement, petitioner recalls the conversation as being that the payment agreement was agreeable to

---

[3] This Court makes no finding as to whether petitioner had, in fact, previously submitted an audit reconsideration request.

[*7] respondent, but that the case was going to be kept open to make sure that the respondent's audit reconsideration unit [sic]."

B.    *Audit Reconsideration Request*

Case activity notes indicate that petitioner was provided a copy of the November 26, 2018, Notice CP210 on August 25, 2022. On August 29, 2022, the IRS received what was labeled a resubmission of petitioner's audit reconsideration documents submitted in July 2021. The letter alleged that the IRS had "erred in treating the removal of an expense from the return as being a math error letter CP210 and not requesting information or providing information to the taxpayer of the reason its expenses were being denied by the IRS." The First SO placed the case in suspense pending consideration of petitioner's audit reconsideration request.

C.    *Second and Third SOs*

Petitioner's request was reassigned to the second SO in March 2023 and to the third SO in August 2023. Both attempted to obtain updates on consideration of petitioner's audit reconsideration request, to no avail.

D.    *Fourth SO*

Petitioner's request was assigned to the fourth SO (Fourth SO) in June 2024. Notably, the Fourth SO shortly thereafter noted in his case activity notes that petitioner's case was "[r]eviewed . . . as part of . . . 10 oldest cases" and eventually noted that it was "[r]eviewed . . . as part of 5 oldest cases." The Fourth SO also tried, to no avail, to obtain updates on the consideration of petitioner's audit reconsideration request. The Fourth SO was informed by the IRS Taxpayer Advocate Service, which petitioner's representative had contacted, that audit reconsideration was precluded by the open CDP case but that petitioner's representative would not withdraw the CDP request to allow audit reconsideration to proceed.

However, the Fourth SO concluded that even though petitioner had not received the Notice of Deficiency mailed on June 11, 2018, the issuance of the Letter 3172 on April 16, 2019, precluded review of the underlying liability in the CDP hearing. The Fourth SO advised petitioner's representative of this in a call on October 29, 2024, and followed up with a fax containing the Notice of Deficiency and Letter 3172 on October 30, 2024. The Fourth SO's declaration in support of the

[*8] Motion puzzlingly states: "I advised petitioner he could only be considered for a collection alternative if he withdrew his CDP appeal, at which point an audit reconsideration could be opened." However, his case activity notes more understandably state: "I advised collection appeal could only offer him a collection alternative because lien was issued with appeal rights."

The Fourth SO and petitioner's representative spoke again on November 1, 2024. According to petitioner:

> Petitioner inquired if the payment agreement could be listed as finalized in order to make it where the CDP codes would be closed as an accepted agreement to allow the respondent's audit reconsideration unit to feel comfortable to move forward. Respondent's SO did not provide an answer about simply formalizing the installment payment agreement and being able to close the CDP codes . . . .

According to the Fourth SO's case activity notes, they discussed the possibility of petitioner's withdrawing the CDP request to allow audit reconsideration, the possibility of the Fourth SO's issuing a Notice of Determination, and the possibility of the IRS's granting petitioner's refund claim. Petitioner's representative indicated that he wanted time to think about the options. The Fourth SO indicated that he would issue a Notice of Determination if he had not heard back by November 8, 2024.

Despite the mention of a possible collection alternative in the Fourth SO's notes with respect to the October 29, 2024, call, there is no indication that petitioner's representative indicated in either that call or the one on November 1, 2024, that petitioner was not interested in an installment agreement. And, to the contrary, petitioner argues that the Fourth SO's declaration omits relevant parts of the conversations including "related to . . . inquiries about accepting the payment agreement."

When the Fourth SO had not heard back from petitioner's representative by November 12, 2024, he prepared the NOD. The Fourth SO had determined, after speaking with the First SO, that there had not been approval of the section 6662 accuracy-related penalty satisfying the requirements of section 6751(b). Accordingly, the Fourth SO also completed a request to abate the section 6662 penalty on November 12, 2024; the request was signed by his manager on November 18, 2024.

**[\*9]** V. *NOD*

The NOD, dated November 20, 2024, explains that the proposed levy action is not upheld with respect to the 2015, 2016, and 2017 tax years given that there is no balance outstanding with respect to them.[4] It further explains that the proposed levy action is upheld with respect to the 2014 tax year. It elaborates that although petitioner disagreed with the balance owed with respect to that year, review of the underlying liability for that year is precluded because petitioner had appeal rights in connection with the Letter 3172. Nevertheless, the NOD explains that the section 6662 accuracy-related penalty for the 2014 tax year was abated. It further states: "You did not want a collection alternative for a balance you did not agree with. Consequently, we have little option but to sustain Collection's proposed levy action."

The attachment to the NOD (Attachment) explains that the Fourth SO had no prior involvement with respect to the specific tax periods and that he verified that the requirements of any applicable law or administrative procedure were met. Specifically, IRS records confirm the proper issuance of the notice and demand, notice of intent to levy, and notice of a right to a CDP hearing. The Attachment also concludes that an assessment was properly made for each tax and period to which the Levy Notice relates, that notice and demand for payment was mailed to petitioner's last known address, and that there was a balance due when the Levy Notice was issued. The Attachment explains that a review of the assessment file did not confirm that proper managerial approval was obtained in advance of the assessment of the section 6662 penalty and that it has therefore been abated in full.

The Attachment lays out the history of the interactions between petitioner and Appeals. It indicates that in response to the Fourth SO's question whether petitioner was interested in an installment agreement, petitioner's representative "said [petitioner] do[es] not want to have an installment agreement for a balance [petitioner] do[es] not owe." It further explains with respect to the consideration of collection alternatives that petitioner's representative "would not agree to a collection alternative for a balance [petitioner] did not owe." The Attachment concludes:

---

[4] Respondent's Motion notes that the references to 2017 are in error, as the years raised in Form 12153 were 2014, 2015, 2016, and 2018.

**[\*10]** Since you did not agree to a collection alternative, the IRS has little choice but to collect your tax liability as best it can by means of the proposed levy action until you decide to voluntarily pay. It is my judgment to sustain the proposed levy action as it balances the efficient collection of taxes with your legitimate concern that the collection action be no more intrusive than necessary.

## *Discussion*

### I. *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In the U.S. Court of Appeals for the Ninth Circuit, to which an appeal of this case would presumptively lie, *see* § 7482(b)(1)(G)(ii), review of CDP determinations is limited to the administrative record unless the underlying liability is at issue, *see Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases.

### II. *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of Appeals; rather, the Court's review is limited to determining whether Appeals' decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v.*

**[\*11]** *Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

In a CDP hearing, a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive a statutory Notice of Deficiency for the tax liability or did not otherwise have an opportunity to dispute it. *See* § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e)(1). The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after assessment of the liability unless the opportunity was offered before the assessment of a tax subject to deficiency procedures. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E2; *see also Lewis v. Commissioner*, 128 T.C. 48, 61–62 (2007).

As discussed *supra* Background Part I, after assessing tax, additions to tax, a penalty, and statutory interest with respect to the 2014 tax year, on April 16, 2019, the IRS issued Letter 3172, offering petitioner an opportunity for a CDP hearing in which it could have disputed those amounts. Although the letter reported an incorrect assessment date for most of the amounts that did not correspond to petitioner's self-reporting on its return for the 2014 tax year, the amount listed as the outstanding balance reflected the assessed amounts and was sufficient to put petitioner on notice that there was an amount to dispute.

Respondent has produced Letter 3172, USPS Form 3877, and both a transcript and petitioner's tax return for the 2018 tax year reflecting the address included on Letter 3172 and USPS Form 3877 as petitioner's last known and correct address as of April 16, 2019. The letter was sent by certified mail to petitioner's last known address, and it was not returned to the IRS. The page of USPS Form 3877 attached to the Motion does not demonstrate exact compliance with mailing procedures, because it does not reflect the number of items received by the USPS. *See Massie v. Commissioner*, T.C. Memo. 1995-173, 1995 WL 225549, at \*3, *aff'd*, 82 F.3d 423 (9th Cir. 1996) (unpublished table decision). Accordingly, there is not a presumption of regularity in favor of respondent that applies to shift the burden to petitioner to establish that Letter 3172 was not received. *See Coleman v. Commissioner*, 94 T.C. 82, 88–91 (1990); *see also United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984). However, USPS Form 3877 nevertheless serves as

**[\*12]** probative evidence of the mailing of Letter 3172. *See Portwine v. Commissioner*, T.C. Memo. 2015-29, at \*11–12, *aff'd*, 668 F. App'x 838 (10th Cir. 2016); *Massie v. Commissioner*, 1995 WL 225549, at \*3.

Petitioner states that respondent has not provided a "true copy" of Letter 3172, providing instead a computer-generated printout that includes a "Facsimile Federal Tax Lien Document" together with a copy of the Letter 3172. However, section 6330 does not require Appeals to give a taxpayer copies of what it consults. *See Nestor v. Commissioner*, 118 T.C. 162, 166–67 (2002). Nor does it prescribe specific documents that Appeals must consult in undertaking its verification task. *Cf. Roberts v. Commissioner*, 118 T.C. 365, 371–72 (2002), *aff'd per curiam*, 329 F.3d 1224 (11th Cir. 2003); *Alamo v. Commissioner*, T.C. Memo. 2017-215, at \*34 (rejecting arguments against a computer-generated, reprinted notice, considering consistency in tracking number, name, and address among the notice and USPS Form 3877), *aff'd*, 751 F. App'x 583 (5th Cir. 2019).

Furthermore, although petitioner did not respond to Letter 3172, and "has no recollection of receiving" it, petitioner has not denied that Letter 3172 was received. And in fact, petitioner continued to use the address to which Letter 3172 was sent for return filing after Letter 3172 was mailed. Petitioner does not attempt to reconcile its statement about what public records might have showed about its address with what its own filings indicate was its address, and its statements about addresses and representation are questionable. Given the foregoing, this Court concludes that petitioner received Letter 3172 and therefore had a prior opportunity to dispute the underlying liability reflected thereon.[5] Thus, this Court reviews Appeals' determination for abuse of discretion. *See Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182.

In conducting this review, this Court looks to the reasons offered in the NOD, as supplemented by other documents in the record, such as Appeals' case activity notes. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at \*8; *see also Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the

---

[5] As noted *supra* Background Part I, an additional amount under section 6651(a)(2) and additional statutory interest were assessed on May 18, 2020, after Letter 3172 was issued. However, petitioner has consistently articulated its dispute with respect to the underlying liability both before Appeals and before this Court as relating to the additional tax assessed, which was reflected in Letter 3172.

**[\*13]** record." (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001))).

III.    *Evaluation of Appeals' Determination*

This Court considers whether Appeals (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues petitioner raised; and (3) considered whether the proposed collection actions balance the need for the efficient collection of taxes with petitioner's legitimate concern that any collection action be no more intrusive than necessary. *See* § 6330(c)(3).

A.    *Verification*

Petitioner has not disputed that the Notice of Deficiency was mailed or that the address to which the Notice of Deficiency was mailed was petitioner's last known address nor raised any other dispute related to the verification requirement. Nevertheless, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). Appeals obtained the Notice of Deficiency and the certified mail list and confirmed that they reflect petitioner's last known address as of June 11, 2018. The certified mail list demonstrates exact compliance with mailing procedures. *See Massie v. Commissioner*, 1995 WL 225549, at \*3; *Stein v. Commissioner*, T.C. Memo. 1990-378. And the returned mail indicates that the Notice of Deficiency was mailed. *Cf. Alamo*, T.C. Memo. 2017-215, at \*25–26 ("Logic dictates that an item cannot be returned as unclaimed unless it was first mailed."). Accordingly, this Court concludes that the Notice of Deficiency was sent via certified mail to petitioner's last known address and was valid. *See* § 6212(a). Furthermore, on the basis of its review, this Court has no reason to doubt that Appeals ultimately conducted a thorough review of the record and verified that all applicable requirements were met. However, given the absence from the administrative record of documents apparently reviewed by Appeals,[6] this Court declines to conclude that there was no abuse of discretion with regard to the verification requirement.

---

[6] It is particularly noteworthy that, as noted *supra* Background Part I, Notice CP210 and USPS Form 3877 for Letter 3172 are not included in the Administrative Record respondent filed.

**[\*14]** B.  *Issues Petitioner Raised*

In addition to raising a dispute with respect to the underlying liability, review of which is precluded for the reasons discussed *supra* Discussion Part II, petitioner requested an installment agreement pursuant to which petitioner proposed to pay $5,000 per month. In its Petition, petitioner argues:

> Respondent's written decision willfully ignores that the petitioner has believed it was in an installment payment agreement; has acted as though it was in an installment payment agreement; and voiced concerns about what the attempts to close the Collection Due Process Hearing through a withdrawal action would do to the payments made through the installment payment agreement over the past two years.

However, entry into an installment agreement requires more formality than an offer by a taxpayer and continued payment on an optimistic assumption that it will be accepted—specifically, a written agreement. *See* § 6159(a) (describing installment agreements as "written agreements" that the government "is authorized to enter into"); Treas. Reg. § 301.6159-1(c)(1)(i), (2) (indicating that a proposed installment agreement is not accepted until notification by the IRS and that an installment agreement must be in writing). Petitioner has provided no written documentation of the purported installment agreement.

Moreover, the administrative record reflects that the First SO consistently indicated that consideration of an installment agreement was still pending. And petitioner claims that the installment agreement with Appeals was effective, and that petitioner began making payments in the amount requested pursuant to it, in August 2021, before petitioner's request was even under consideration by Appeals, underscoring that petitioner's payments could not have been pursuant to any sort of agreement. Accordingly, this Court does not agree with petitioner that the IRS inappropriately denied the existence of an installment agreement. And, in fact, in its Response to Motion for Summary Judgment (Response), petitioner "states that if a summary judgment is issued, it should be in favor of formalizing the installment payment agreement."

Although this Court does not have authority to grant the requested relief, petitioner also states that the Fourth SO "elected to

[*15] disregard the ability to formalize the acceptance of the $5,000 per month, instead offering only the option of withdrawing the Collection Due Process request." Accordingly, petitioner can be understood more broadly to dispute the NOD's denial of an installment agreement, and this Court reviews that denial for abuse of discretion.

Although there was some delay by petitioner in submitting the financial documentation requested by the IRS in connection with an installment agreement, the administrative record suggests—consistent with petitioner's articulation of the August 24, 2022, call—that by the time the First SO completed her work on the case, she thought sufficient information had been submitted. She indicated in her case activity notes that consideration of the installment agreement had yet to be completed but put the case in suspense pending a determination with respect to petitioner's audit reconsideration request. There is no indication in the administrative record that any subsequent SO reviewed or otherwise arranged for the review of the information that petitioner had submitted to the First SO shortly before she placed the case in suspense. And there is no indication in the Fourth SO's case activity notes that he considered petitioner's eligibility for an installment agreement, consistent with petitioner's statement in the Response that the Fourth SO "did not make any consideration about collection alternatives."

The Fourth SO's case activity notes indicate that his initial conversation with petitioner's representative focused on explaining that petitioner would not be able to obtain review of the underlying liability pursuant to the CDP case. The followup conversation could be understood as a more fulsome discussion of petitioner's options, and the option presented of issuing a notice of determination could be understood as potentially encompassing an option of agreeing to enter into an installment agreement instead of sustaining the levy. However, there is no indication in the Fourth SO's notes that the installment agreement was discussed. Therefore, this Court is skeptical of the statement in the NOD that petitioner's representative "said [petitioner] do[es] not want to have an installment agreement for a balance [petitioner] do[es] not owe."

Significantly, in that regard, respondent's Motion does not mention petitioner's purported disinterest in an installment agreement—the only reason stated in the NOD—as the basis for denying the installment agreement. Instead, it argues that "petitioner did not timely provide the requested financial documentation to [the First SO] and the audit reconsideration team. Therefore, [the First SO]

**[\*16]** properly determined that an installment agreement could not be granted." But, as pointed out, the First SO's case activity notes do not reflect that determination and, in fact, indicate to the contrary, as petitioner understood. And the declaration of the Fourth SO submitted in support of the Motion similarly indicates that "petitioner's eligibility for an installment agreement was being determined" when the First SO put petitioner's case in suspense and when the case was reassigned from the First SO. Furthermore, the Court does "not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel." *Kasper*, 150 T.C. at 24–25.

As noted, neither the record nor petitioner's posture before this Court lends credence to the idea that petitioner indicated disinterest in an installment agreement, supporting a denial. And there is no other indication in the record of why the installment agreement actually was denied. It is also not clear whether the one-week deadline that the Fourth SO gave petitioner's representative to reply to him was reasonable, given the years-long pendency of petitioner's case, the delays in which can largely be attributed to the IRS's failure to communicate about petitioner's audit reconsideration request. *Cf. Long v. Commissioner*, T.C. Memo. 2023-130, at \*10. Thus, this Court cannot conclude that the denial was not an abuse of discretion.

C.     *Balancing Analysis*

As to "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary," *see* § 6330(c)(3)(C), the NOD again relies on the assertion that petitioner rejected the option of an installment agreement. Given its skepticism of this assertion, this Court cannot conclude on the record before it that it was not an abuse of discretion to determine that sustaining the levy was more viable than considering the installment agreement that petitioner had requested and still seeks.

IV.     *Conclusion*

Given the foregoing, this Court will grant respondent's Motion in part, in that this Court will sustain the determinations in the NOD with respect to the 2015, 2016, and 2018 tax years, but will otherwise deny respondent's Motion and remand this case to Appeals for a supplemental hearing, in which this Court expects that Appeals would focus on consideration of petitioner's request for an installment agreement with

**[\*17]** respect to the 2014 tax year liability and on the scope of the administrative record. *See Kelby v. Commissioner*, 130 T.C. 79, 86 n.4 (2008).

To reflect the foregoing,

*An order will be issued remanding the case to Appeals for further consideration.*