# United States Tax Court

T.C. Memo. 2026-38

TERRELL JOSEPH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18262-23L.                    Filed May 5, 2026.

————

*Eric Edward Thorstenberg*, for petitioner.

*Elizabeth E. Underwood* and *Sandreea L. Woods*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case, petitioner timely filed a Petition under sections 6320(c) and 6330(d)(1),[1] requesting that this Court review (1) a Notice of Determination Concerning Collection Actions under IRS Sections 6320 or 6330 of the Internal Revenue Code (Levy NOD) addressing a levy with respect to petitioner's federal income tax liabilities for his 2011 through 2017 tax years and (2) a Letter 3210, Decision Letter on Equivalent Hearing Under Internal Revenue Code Sections 6320 and/or 6330 (Lien Decision Letter), addressing liens with respect to his federal income tax liabilities for the 2011 through 2014 tax years and the 2016 and 2017 tax years. The Levy NOD and the Lien Decision Letter sustain a proposed levy and the filing of Notices of Federal Tax Lien (NFTL) and reject petitioner's

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[*2] proposed offer-in-compromise (OIC). They were followed by a Supplemental Notice of Determination Concerning IRS Collection Actions Under Internal Revenue Code Sections 6320 or 6330 (Supplemental NOD), recharacterizing the Lien Decision Letter as a Notice of Determination. The Supplemental NOD was issued to petitioner following a supplemental CDP hearing with the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals).

Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that there are no genuine issues of material fact and that it was not an abuse of discretion for Appeals to reject petitioner's OIC and sustain the levy and the NFTL filings. For the reasons discussed herein, this Court will deny the Motion and remand the case to Appeals.

*Background*

The following facts are based on the parties' pleadings, the Motion papers, and the administrative record, as supplemented. *See* Rules 93, 121(c). The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Georgia when the Petition was filed.

I.      *Underlying Liabilities*

Petitioner filed income tax returns for the 2011 through 2017 tax years. An identity theft issue with respect to the 2011 tax year was addressed shortly thereafter, but the IRS subsequently undertook examinations of petitioner's returns for tax years 2011 through 2016 and assessed deficiencies, additions to tax, and/or penalties, as well as interest, with respect to those years. The statutory Notices of Deficiency (SNODs) relating to these liabilities are discussed *infra* Background Parts III.A and VI and Discussion Part II.

II.     *CDP Notices and Requests*

A.      *Levy*

The IRS sent petitioner Letter 1058, Notice of Intent to Levy and Notice of Your Rights to a Hearing, dated February 2, 2021. In response, petitioner's representative submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated March 1, 2021, which was stamped received on March 3, 2021. It indicates that the

[*3] periods at issue are the 2011, 2012, 2013, 2014, 2015, and 2016 tax years, that both a Notice of Federal Tax Lien and a Proposed Levy or Actual Levy are at issue, and that petitioner was interested in an OIC. It states simply: "Identify Theft."

Also apparently enclosed with the fax transmitting Form 12153 was Form 9423, Collection Appeal Request, dated January 13, 2021, which identifies the 2014, 2015, 2016, and 2017 tax years as the periods at issue. It indicates that it is appealing a Federal Tax Lien, a Levy or Proposed Levy, and Seizure. It further states:

> According to an audit that was conducted by the IRS the outcome was absolutely erroneous. The auditors are stating that I owe more than I ever made and there has to be some mistake somewhere. I call and write but never get an answer or response from the IRS. I would appreciate if someone sensible would actually take the time to assist me with this matter. The auditors never took into consideration ANY of my expenses for the business that I run.

B.    *Lien*

On April 19, 2021, an IRS Collection (Collection) revenue officer (RO) working on petitioner's case identified various parcels of real property owned or co-owned by petitioner and made a decision to file NFTLs. The IRS subsequently sent petitioner two Letters 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (Lien Notices), both dated April 29, 2021, and both indicating petitioner needed to request a hearing by June 7, 2021. One of these Lien Notices indicated that NFTLs had been filed with respect to the 2011, 2012, 2013, 2014, and 2015 tax years, and the other that NFTLs had been filed with respect to the 2016, 2017, 2018, and 2019 tax years.

Petitioner's representative submitted a letter to the IRS dated June 7, 2021 (June 7 letter), describing some history of petitioner's interactions with the IRS. Relatedly, the June 7 letter enclosed an earlier letter from petitioner to the IRS dated March 8, 2021, explaining:

> In January 2012 I received a W2 form from Checkers Restaurant showing I earned approximately $21,000.00 as a wage earner. Upon receiving this letter, I contacted the Internal Revenue Service immediately concerning what I knew was an error.

**[*4]** After conversing with the representative on the phone it was determined my identity had been stolen. . . . I was . . . advised to write a letter to IRS detailing all of the events and the letter was dated August 28, 2012. The outcome of that letter was determined September 25, 2012. In that letter I was informed . . . I would be notified when my account would be resolved. In May of 2012 I received a refund from the IRS and thought the issue was behind me. This tax year of 2012 started the issues going forwards as the subsequent years as if my expenses were not being accepted and it was showing I owed amounts that were never agreed upon and this has been ongoing for tax years of 2011-2017.

The June 7 letter also explains that petitioner and his representative had a call with the IRS and accordingly sent in Forms 12153 and 9423, as requested, and also filed an OIC on March 11, 2021. The June 7 letter expresses consternation about the fact that the IRS then prepared NFTLs, dated April 20, 2021, and mailed a notification letter to petitioner's representative on May 13, 2021. The June 7 letter requests that the liens be withdrawn "on the basis that these liens were filed 'prematurely or not in accordance with IRS procedures,'" because petitioner "was not given proper notice of the lien filings [and] in fact was led to believe that the forms submitted were being reviewed." The June 7 letter enclosed copies of the referenced NFTLs, dated April 20, 2021, and Letter 3262 to petitioner's representative, dated May 13, 2021, as well as Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien (Internal Revenue Code Section 6323(j)), and Form 14135, Application for Certificate of Discharge of Property from Federal Tax Lien, both dated June 7, 2021.

Furthermore, the June 7 letter states: "According to the Notice of Federal Tax Lien Filing we have until 6/7/2021 to request an appeal (since the other one was ignored). I sent this to you earlier but will be attaching it once again in this packet."

The administrative record contains a Form 12153 indicating that it relates to the 2011 through 2020 tax years, which is dated by petitioner June 8, 2021, and stamped received June 9, 2021. The RO's notes indicate that the June 7 letter was attached to the Form 12153. The RO's notes for June 7, 2021, indicate a discussion with petitioner's representative concerning the genesis of the liabilities underlying the NFTLs, stating:

[*5] POA states that all the returns are due to ID-TFT. She said that an exam agent came to her office a few months before the Government shutdown in about 2018. The audit went on for months and once the shutdown hit the audit stopped. Once the Government opened back up the exam agent didn't come back. Eventually she received something that the audit was complete. Since then they disagreed with the assessment and has been trying to get a resolution but hasn't seem to get it resolved.

The RO's notes for June 8, 2021, then state: "POA faxed in 20+ pages of documents regarding CDP, etc." Notes from June 14, 2021, state both that the RO had received a fax from the representative on June 8, 2021, and that the CDP hearing request was received on June 9, 2021, via fax. There is no evidence in the administrative record of separate submissions on separate dates in June 2021 other than the varying dates on the documents in the record and the references thereto.

III. *Before First CDP Hearing*

A. *Appeals' Preliminary Review*

Petitioner submitted unsuccessful OICs before the one analyzed in the Levy NOD and Lien Decision Letter, leading to intermittent delays in consideration by Appeals. Accordingly, some Appeals officers were involved simply to monitor petitioner's case while it was under review by Collection. One Appeals officer (First AO) began substantive work on petitioner's CDP hearing request in October 2021. She reviewed to determine whether petitioner's CDP hearing requests were timely, concluding that the one with respect to the Lien Notices was not. She verified that she had no prior involvement with the taxes and the 2011 through 2017 tax years and concluded that all procedures had been followed. Her notes also state: "Will request [certified mail list (CML)] and SNOD to determine if can raise liability in CDP." However, once she determined that petitioner's OIC had been returned by Collection and that another OIC was under consideration,[2] the First AO placed the case in suspension. Accordingly, Appeals sent petitioner a letter dated January 14, 2022, confirming receipt of his CDP hearing request and indicating that his case was in suspension pending consideration of his

---

[2] One OIC was returned on November 29, 2021, because petitioner failed to submit payment and fees. Another OIC was received on December 15, 2021, but after significant back-and-forth, it was eventually returned on September 6, 2022, because petitioner failed to make estimated tax payments.

[*6] OIC. The letter also indicates that the request with respect to the levy action was timely but that there was not a timely filed lien hearing request.

Another Appeals officer (Second AO) began substantive work on petitioner's case in October 2022. His review also concluded that the hearing request in response to the Lien Notices was untimely. He verified that he had no prior involvement with the taxes and 2011 through 2017 tax years and also concluded that all procedures had been followed. He requested the SNODs for 2011 through 2016.

The Second AO's notes indicate that he was informed that the SNODs could not be found, but the notes also indicate that he received "Letters 531, Forms 4549A, . . . & 2 CMLs" and that he "received SNOD for 30/201112." Despite the fact that the references to Letters 531 and an SNOD suggest receipt of SNODs by the Second AO, the administrative record does not include any SNODs. However, consistent with the notes, the administrative record does include undated Forms 4549–A, Income Tax Examination Changes (Unagreed and Excepted Agreed). It also includes undated Forms 4549B, Income Tax Examination Changes; undated Forms 5278, Statement – Income Tax Changes; undated Forms 886–A, Explanation of Items; and calculations dated October 21, 2015, and October 29, 2019.

The administrative record also includes a U.S. Postal Service (USPS) Form 3877, Firm Mailing Book For Accountable Mail, with two separate entries reflecting petitioner's name and address and a tracking number, with one relating to tax years 2011 and 2012 and the other relating to tax year 2013. The USPS Form 3877 also contains a USPS stamp with the date, January 19, 2016, the number of items provided by the IRS and received by USPS, and a signature for the Postmaster. It does not contain any indication of the contents of the mailed documents. The administrative record also contains a USPS Form 3877 with an entry reflecting petitioner's name and address and a tracking number, relating to the 2014, 2015, and 2016 tax years. The USPS Form 3877 includes the number of items provided by the IRS and a typed date of March 6, 2020, but it does not include a USPS stamp with the date, the number of items received by USPS, or a Postmaster's signature. Nor does it include any indication of the mailed document's contents. A printout of tracking information corresponding to the tracking number on the USPS Form 3877 dated March 6, 2020, shows delivery "to Agent for Final Delivery" on April 7, 2020.

**[\*7]** The Second AO's notes indicate that in response to petitioner's representative's assertion that petitioner had appealed all of the liabilities, the Second AO informed petitioner's representative that IRS computer transcripts showed that petitioner had appealed his 2011 tax year liability, agreed with the IRS's adjustments with respect to his 2012, 2014, and 2015 tax year liabilities, and failed to file a petition with respect to SNODs for his 2013 and 2016 tax year liabilities. Petitioner's representative then indicated that petitioner was interested in requesting an installment agreement (IA). The Second AO instructed her to submit Form 433–A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, three months of bank statements, and the current tax return, and the representative indicated that she would fax it within 15 days. The Second AO subsequently determined that another OIC had been submitted.

### B.   *Collection's Review of OIC*

The IRS received a new OIC and Form 433–A (OIC) from petitioner on December 19, 2022. On the OIC petitioner checked the box for "Doubt as to Collectibility," but he also checked the box for "The amount offered is based on my exceptional circumstances other than economic hardship. Collection of my full liability could undermine public confidence that the tax laws are being administered in a fair and equitable manner." He did so despite not checking the box for "Effective Tax Administration," for which this was one of the options. Under that was written: "MY ACCOUNT HAS BEEN AUDITED FOR SEVERAL YEARS. I HAVE SUPPLIED ALL SUPPORTING DOCUMENTATION AND STILL NONE OF MY SUPPORTING DOCS WERE CONSIDER TO OFFSET THE EXPENSES OF MY BUSINESS. THIS AMOUNTS IS OBSURD AND EXTREMELY INFLATED AND INACCURATE." The OIC offered $5,160 in five payments for the 2011 through 2019.

Petitioner's December 19, 2022, OIC submission was accompanied by a letter from petitioner dated December 12, 2022. The letter explains petitioner's filing and examination history, stating:

> I was audited in 2017-2018 and it took weeks gathering all the requested documentation to the Agent. Within months the IRS went on furlough and all communications was lost. I called repeatedly for months with no response from the IRS agent assigned to my case. . . . A few months later I finally received a letter in the mail stating that I owed over 2 million dollars.

[*8] The letter attributes the liabilities that the IRS sought to collect to the IRS's rejection of petitioner's documentation of business expenses. It states: "This letter has been included with the Offer in Compromise to further explain why my offer is what it is. My offer is based on my current income and my ability to repay any outstanding tax debts that I owe at this time."

Petitioner's Form 433–A (OIC) indicates that he is unmarried. It identifies two parcels of real property, one at Sable Trail, identified as held as a joint tenancy and having a current fair market value of $298,000, and one at Sawgrass Walk, identified as a business location and having a current fair market value of $598,000. Petitioner included a real estate website printout showing that the Sable Trail property was owned by him and another person and that it had a "Total Tax Appraisal" for 2022 of $268,900, as well as statements reflecting that the mortgage balances on the property were $145,138 as of October 14, 2022, which number petitioner reported on Form 433–A (OIC), and $144,735 as of November 15, 2022. He also included a printout showing that the "Total Tax Appraisal" for 2022 for the Sawgrass Walk property was $598,700, as well as a statement reflecting that the mortgage balance on the property was $215,775 as of December 1, 2021. Form 433–A (OIC) also identifies a vehicle that it computes as representing no equity for petitioner.

In addition, petitioner's Form 433–A (OIC) indicates that petitioner owns a sole proprietorship, Joseph 2 Unlimited LLC, with a checking account with a balance of $9,500, which is consistent with an attached bank statement dated October 31, 2022. However, attached to Form 433–A (OIC) were bank statements for Joseph 2 Unlimited LLC dated June 30 through November 30, 2022. The balances on the statements, including the November 30, 2022, balance of $13,699, were accurately summarized by the IRS on a Bank Statement Analysis, which also accurately determines the average balance for the months as $15,827.

Petitioner's Form 433–A (OIC) computes net business income with respect to the business for most of 2022 as $51,464. It calculates remaining monthly income as $430 and accordingly calculates future remaining income as $5,160. However, it also calculates total equity in

[*9] assets as $850,732[3] and therefore a required offer amount of $855,532.

Also included with petitioner's Form 433–A (OIC) was a list of three other items of real property owned by petitioner, with stated values, and notes that two of the properties were under renovations and another was "used for business out of state." The list indicates that petitioner was "[u]nable to refinance or sell at this time due to the erroneous IRS debt."

A financial analysis report prepared by Collection with respect to petitioner, dated July 11, 2023, shows net monthly income of $255 and therefore total future income of $3,060. An "Assets/Equity Table" in the report shows that petitioner had net equity in assets of $619,246. In connection with preparing the report, Collection searched for online appraisal estimates of the two pieces of real property petitioner identified on Form 433–A (OIC), as well as other pieces of real property he identified in the attachment. Of the additional items of property, only the value of the property identified as used for business out of state was taken into account, and instead of using the $205,000 value for the property posited by petitioner, Collection used a $125,950 value based on its searches. It also used values based on its searches for the Sable Trail and the Sawgrass Walk properties, which were higher than the values petitioner reported. However, Collection used the older, higher mortgage amount petitioner reported for his home and the outdated mortgage amount he reported for his business address. The report accordingly determines that the amount that could be paid was $622,306, as compared to petitioner's offer amount of $5,160.

In a letter dated July 14, 2023, Collection stated:

Our analysis of the information you provided indicates we cannot accept your offer in compromise at this time.

Please call the above number to discuss. If we do not hear from you or your representative within 10 days we will reject your offer based on the information you have already submitted.

Collection followed up with a predetermination letter dated July 31, 2023, indicating that it intended to reject petitioner's offer because

---

[3] This amount appears to incorrectly omit the $9,500 in petitioner's business bank account.

**[*10]** it determined that petitioner would have to increase the offer amount before acceptance of the OIC could be considered.

    C.    *Appeals' Review of OIC*

On August 24, 2023, the Second AO and petitioner's representative spoke about Collection's predetermination letter. When the representative indicated that petitioner disagreed with Collection's treatment with respect to the real properties, the Second AO instructed her to provide specific items that petitioner disagreed with and supporting documentation within 14 days. They also scheduled hearings.

On August 30, 2023, petitioner's representative faxed to the Second AO a letter dated August 24, 2023, stating:

1. [The Sawgrass Walk property] is not owned by Terrell Joseph but by Joseph 2Unlimited LLC.

2. Joseph 2Unlimited is owned by Terriell [sic] Joseph and has been since 8/2014

3. The Lincoln Navigator is not mines [sic] but I am financing this vehicle (statement included)

4. [The Sable Trail property] is owned by my wife (innocent spouse) and myself. I am not the sole owner of this property. The tax appraisal from the county is $268,900 (see attached tax record from county)

5. The Wells Fargo bank account does not have $15,827.00 (see attached statement for new balance).

Among the enclosed documents were more real estate website printouts with substantially the same information as the previous ones. The one for the Sable Trail property has a handwritten note stating that the "[p]roperty is owned 50/50 with innocent spouse," and the one for the Sawgrass Walk property has a handwritten note stating that the "[c]lient does not own this property." Also enclosed was a statement from Wells Fargo showing an "[a]utomatic loan payment" amount broken down into principal and interest, with a handwritten note stating "Lincoln Navigator Loan." An enclosed copy of Collection's Asset/Equity Table contained handwritten notes suggesting that the amount of the remaining encumbrance of petitioner's vehicle was less than the "Quick

[*11] Sale Amt" with respect thereto, contrary to Collection's understanding that led to a determination of zero net equity therein. Also noted with respect to the Sable Trail property was "x .50," presumably to indicate that petitioner believed that only half of the value of that property should be taken into account. And petitioner enclosed a Wells Fargo statement showing balances in his personal accounts there as of August 15, 2023, totaling less than $2,000 but did not enclose a statement reflecting his business bank account.

During his review, the Second AO compared the bank account values used by Collection to the amounts reflected on the statements provided by petitioner with Form 433–A (OIC), concluding that they were correct and that

4. [The Sable Trail property] has FMV of $307,552.00 and equity of $100,879.60. TP is a single and there is no deed showing co-ownership.

5. [The Sawgrass Walk property] has FMV of $717,943.00 and equity of $401,779.40 and is owned by Joseph2 unlimited which TP owns and TP lives in the property. Non activity on EIN.

The Second AO's notes for August 23, 2023, also state: "Cause of liability: Exam audit. TP is not contesting the liability."

IV.  *First CDP Hearing and Equivalent Hearing*

On September 20, 2023, the Second AO and petitioner's representative convened for the hearings, which apparently were undertaken with some separation among issues.

According to his notes, the Second AO informed petitioner's representative that because the request for a hearing with respect to the Lien Notices was not received timely, an equivalent hearing would be held, but that all the same issues could be raised to him as in a CDP hearing.

According to his notes, the Second AO explained as follows with respect to petitioner's OIC:

[M]y role in this type of appeal is limited to discussing items you want to dispute that are found on the offer tables that you received from the Service with the rejection

**[\*12]** letter. . . . We will limit our review only to those items you want to dispute from those two tables. . . . During this appeal process, . . . we will not discuss or revisit any items that are not being disputed. . . . [T]o challenge the amount given by the Offer Specialist to your real estate property, you must submit a 3rd party appraisal and the latest mortgage statement, if applicable, for your appeals consideration.

He further explained that Appeals would use the county appraisal values noted by petitioner for the Sable Trail and Sawgrass Walk properties, noting that the latter was titled to petitioner's business.

The Second AO explained that Appeals computed petitioner's reasonable collection potential (RCP) as $452,334, which petitioner's representative indicated petitioner could not pay. According to the Second AO's notes: "Taxpayer was asked to increase the offer and declined to. Taxpayer does not want to sell real properties per POA."

The Second AO also noted that petitioner's Form 12153 mentioned identity theft, but petitioner's representative apparently did not elaborate. Petitioner's representative again requested an IA, but the Second AO indicated that petitioner had enough equity to make a partial payment before entering into an IA. Given that petitioner's representative indicated that petitioner would not sell his property, the Second AO informed petitioner's representative that Appeals would sustain the rejection of the offer and sustain the proposed collection actions.

V.    *Levy NOD and Lien Decision Letter*

Appeals issued the Levy NOD and the Lien Decision Letter, both dated October 24, 2023. The Levy NOD addresses all of the years reflected on petitioner's Form 12153 relating to the Letter 1058, plus, without explanation, the 2017 tax year. However, the Lien Decision Letter addresses only the 2011 through 2014 tax years and the 2016 and 2017 tax years, omitting, without explanation, the 2015 tax year, as well as the 2018 and 2019 tax years for which NFTLs were filed and review requested, and the 2020 tax year for which petitioner inexplicably requested review. The attachments to the Levy NOD and the Lien Decision Letter explain that Appeals verified that the requirements of any applicable law or administrative procedure were met and that records confirm the proper issuance of the notice and demand, notice of

**[\*13]** intent to levy and/or notice of NTFL filing, and notice of a right to a CDP hearing. They further explain that assessments were properly made, that notice and demand was mailed to petitioner's last known address, and that there was a balance due when the notice of intent to levy was issued or the NFTLs were filed, as applicable. The attachments note that Collection returned an OIC because of missed tax payments and recommended rejection of the OIC under consideration because it was below petitioner's RCP. They further note that Appeals adjusted the fair market value of petitioner's real property, thereby reducing his RCP, but that petitioner declined to increase his offer amount to the adjusted RCP amount, leading Appeals to reject petitioner's OIC.

As to other collection alternatives, the Levy NOD attachment explains:

> An [IA] was considered at the conference. But IRM section 8.22.7.5(08-26-2020)[4] (5) sates [sic]: When determining the acceptability of an IA, consider all relevant facts including the taxpayer's compliance history, ability to pay and equity in assets. You have enough equity is [sic] assets to partially pay the liabilities, therefore, not qualify for an IA.

> You do not qualify for being placed in currently not collectable status or hardship under IRC 6343.

The Lien Decision Letter also concludes substantially similarly.

The Levy NOD and Lien Decision Letter attachments also explain that although petitioner disagreed with IRS adjustments to his tax liabilities, those adjustments could not be disputed because the 2011 tax year adjustments had been sustained by Appeals and petitioner had received SNODs for the 2012 through 2016 tax years and had not filed a Tax Court petition. Both conclude that Appeals' decision balances the government's needs to collect the balance due with petitioner's concern that the collection action be no more intrusive than necessary, with the Levy NOD noting in support that petitioner did not provide requested documents to support arguments made during the hearing.

---

[4] Citations in this Opinion are to provisions of the Internal Revenue Manual (IRM) as in effect during the relevant portion of Appeals' consideration of petitioner's case.

**[\*14]** The Levy NOD attachment summarizes:

> The evidence reviewed and considered by Appeals did not show your intrusive concerns outweighed the IRS' need for efficient and effective tax administration. Therefore, it is the determination of Appeals that the proposed levy is sustained. You did not qualify for currently not collectable – hardship relief under IRS §6343. You do not qualify for relief of penalty due to reasonable cause.

And the Lien Decision Letter attachment summary is substantially the same. The Lien Decision Letter also states that petitioner did not file a CDP hearing request within the legal timeframe but that, if he can show that it was on time, he can file a petition with the Court to dispute Appeals' decision about timeliness.

In addition to the Levy NOD and the Lien Decision Letter, Appeals issued a letter that states: "You submitted an offer based upon doubt as to collectibility. We're sorry, but the IRS rejection of your offer is sustained because we did not come to an agreement regarding doubt as to collectibility. The amount you are able to pay exceeds the amount of your offer."

VI.    *Tax Court Proceedings*

Petitioner filed the Petition to begin this case on November 20, 2023, attaching to it the Levy NOD, the Lien Decision Letter, and an SNOD for tax years 2014, 2015, and 2016, dated March 6, 2020. Included with the SNOD was a Form 5278, stamped March 6, 2020, and a Form 4549–B, Report of Income Tax Examination Changes, dated March 5, 2020.[5] The Petition states:

> RE: Notice of Determination: I.R.S. has overstated the valuation of petitioner's assets and should not have

---

[5] The addition of a date is not the only difference between the Forms 5278 and 4549–B for the 2014 through 2016 years included with the SNOD and the ones included in the administrative record accompanying computations dated October 29, 2019. *See supra* Background Part III.A. The Form 5278 also reflects increases in amounts of adjustments, resulting in increases in the determined deficiencies and accuracy-related penalties, over the intervening period. And even the number and title for the Form 4549–B make clear that the SNOD copy is not the same as the administrative record copy.

[*15] rejected the values assigned by petitioner in his Response to the Notice and Offer in Compromise.

> RE: [SNOD]: Due to this extensive business related travel, petitioner did not receive timely notice of the Commissioner's [SNOD] for tax years 2014, 2015 and 2016. Said [SNOD] overstates gross receipts and does not account for all of petitioner's related expenses and deductions.

It elaborates:

> Taxpayer's equity in his current personal residence and other assets is not as high as stated by the Commissioner. For tax years 2014, 2015 and 2016, taxpayer is entitled to a reduction in gross receipts as determined by the Commissioner and additional business expenses and itemized deductions.

On respondent's Motion, in an Order dated September 19, 2024, the Court previously partially dismissed petitioner's case on the grounds that the Court lacks jurisdiction as to the SNOD because the Petition was not filed timely. After petitioner filed a First Amendment to Petition stating that his request for a CDP hearing with respect to the Lien Notices was timely filed, the Court remanded this case to Appeals for a supplemental hearing for the limited purpose of considering whether equitable tolling of the CDP hearing request period with respect to the Lien Notices was warranted.

VII.   *Second CDP Hearing*

After this case was remanded to Appeals, a third Appeals officer (Third AO) began work on petitioner's case on May 2, 2025. The Third AO noted that case history confirmed a discussion between the IRS and petitioner's representative on June 7, 2021, and that there is a copy of a document that was in the case file that appears to show a receipt date of June 7, 2021, although it is unclear what the document accompanies. The Third AO also noted that the case file shows that a fax was received on June 8, 2021, which also appears to be the date of the signature on the Form 12153, which was stamped received on June 9, 2021. However, given the evidence that a fax was received on June 7, 2021, and that the cover letter is dated June 7, 2021, the Third AO determined that the CDP request with respect to the liens was likely faxed on June 7, 2021, making it timely. When the Third AO contacted petitioner's

[*16] representative to convey this determination, the representative attempted to raise her concerns about the examinations with respect to petitioner's returns, but the Third SO explained that her review was limited to the timeliness question.

## VIII. *Supplemental NOD*

On July 1, 2025, Appeals issued the Supplemental NOD. The Supplemental NOD explains that petitioner's request for a CDP hearing as it related to the filing of the NFTLs was timely and, therefore, the Lien Decision Letter is recharacterized as a Notice of Determination. The attachment to the Supplemental NOD acknowledges that the IRS received a fax with documents from petitioner's representative on June 7, 2021, so that "it is probable" that the CDP request was received on that day, the date specified in the Lien Notices as the deadline for a CDP request.

## *Discussion*

## I. *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). Generally, summary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520; *see also* Rule 121(c)(1).

In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

**[\*17]** II.    *Standard for Review*

If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000)). If the underlying tax liability is not at issue, the Court reviews the settlement officer's determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza*, 114 T.C. at 182.

In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of the settlement officer; rather, the Court's review is limited to determining whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). In reviewing for abuse of discretion, the Court looks to the reasons offered in the determination, as supplemented by other documents in the administrative record, such as case activity notes. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at \*8.

In a CDP hearing, a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive an SNOD for the tax liability or did not otherwise have an opportunity to dispute the tax liability. *See* §§ 6320(c), 6330(c)(2)(B); Treas. Reg. §§ 301.6320-1(e)(1), 301.6330-1(e)(1). "Receipt of a[n] [SNOD] for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the [SNOD]." Treas. Reg. §§ 301.6320-1(e)(3), Q&A-E2, 301.6330-1(e)(3), Q&A-E2. The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000).

Petitioner's Forms 12153 themselves could have been clearer about the nature and extent of petitioner's dispute of his underlying liabilities.[6] However, contrary to the indication in the Second AO's notes that petitioner did not dispute his underlying liabilities, the correspondence included with petitioner's various filings and the conversations between Appeals and petitioner's representative made

---

[6] The statement "Identity Theft" on the Form 12153 was particularly uninformative, considering that the identity theft concerns apparently related only to the 2011 tax year and had already been resolved.

[*18] the dispute clear. And, contrary to respondent's assertion in the Motion, the Petition raises a dispute with respect to the underlying liabilities for the 2014 through 2016 tax years.

The Motion asserts that the IRS issued an SNOD for those years, but in support thereof, it references only the certified mail list that relates to those years and Forms 886–A, 5278, and 4549B for those years. As noted *supra* Background Part III.A, there is no SNOD in the administrative record. Although the Court has concluded that it lacks jurisdiction as to the SNOD for the 2014 through 2016 tax years, as petitioner notes in his Response to the Motion (Response), such a conclusion reflects only a determination that the SNOD was properly issued, not that petitioner received it in time to file a petition with the Court.

Petitioner alleged in his Petition, and maintains in his Response, that his failure to file a timely Petition with respect to the SNOD for the 2014 through 2016 tax years was due to its late receipt, suggesting that it did not provide an opportunity to dispute the liabilities. And the tracking information corresponding to the certified mail list shows that the mailing for the 2014 through 2016 tax years was delivered "to Agent for Final Delivery" more than a month after it was sent, with no indication of when, if ever, it would actually have been delivered to petitioner.

There is no indication in Appeals' notes that Appeals considered whether petitioner had received the SNOD at all, much less in sufficient time to file a Tax Court petition. And respondent, in the Motion, asserts only that petitioner received the SNOD, not that he received it in time to petition the Tax Court. And, as noted *supra* Discussion Part I, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Accordingly, this Court cannot conclude that the SNOD provided a prior opportunity for petitioner to dispute his liabilities. *Cf. Alamo v. Commissioner*, T.C. Memo. 2017-215, at *28 (concluding that, given that the Commissioner did not dispute that the taxpayer did not receive the SNOD, the Commissioner conceded the issue), *aff'd*, 751 F. App'x 583 (5th Cir. 2019). And given that Appeals rebuffed all of petitioner's attempts to provide information as to his underlying liabilities, this Court also cannot conclude that the issue of his underlying liabilities was not properly raised to Appeals. *See* Treas. Reg. §§ 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3 (indicating that an issue is not properly raised if the taxpayer fails to present any

**[\*19]** evidence with respect to the issue *after* being given a reasonable opportunity to do so); *cf. Alamo*, T.C. Memo. 2017-215, at \*30–31 (concluding that the taxpayer did not properly raise underlying liability given failure to provide information repeatedly requested by Appeals about it).

### III.    *Evaluation of Appeals' Determination*

This Court considers whether Appeals (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues that petitioner raised; and (3) considered whether the proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of petitioner that any collection action be no more intrusive than necessary. *See* §§ 6320(c), 6330(c)(3).

### A.    *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). A valid assessment is one of the requirements that must be verified, and the validity of a deficiency assessment depends on the mailing by certified mail of an SNOD. *See id.* at 200; *see also* §§ 6212(a), 6213(c). Accordingly, the IRM instructs Appeals to "[a]lways ask the taxpayer if they received the SNOD and document their response." IRM 8.22.5.4.2.1.1(4) (Aug. 31, 2020). Although Appeals may generally rely on transcripts showing an assessment to verify that it was properly made, IRM 8.22.5.4.2.1.1(2), that is not permissible if a taxpayer alleges an irregularity, IRM 8.22.5.4.2.1.1(6), such as by indicating that the taxpayer cannot recall receipt of an SNOD, IRM 8.22.5.4.2.1.1(5). In such a case, Appeals is instructed to review a copy of the SNOD and a "Postal Service Form 3877, or equivalent IRS CML bearing a USPS date stamp or the initials of a postal employee." IRM 8.22.5.4.2.1.1(6).

Petitioner and his representative asserted that the IRS agent conducting his examination ceased communicating with him after the furlough running from the end of 2018 into the beginning of 2019 and that they next heard about the case in correspondence "[a] few months later" indicating that "the audit was complete." Given that the referenced correspondence would seem more likely to relate to the October 2019 documents in the administrative record than the SNOD

[*20] dated March 6, 2020, these assertions could be understood as an indication that petitioner and his representative did not recall receipt of the SNOD dated March 6, 2020. *See* IRM 8.22.5.4.2.1.1(5).

If a taxpayer alleges that an SNOD was not mailed, Appeals cannot rely solely on transcripts to verify mailing of an SNOD. *See Hoyle*, 131 T.C. at 205 n.7. Perhaps consistent with that, Appeals sought to obtain the SNOD and certified mail lists related thereto. Appeals did obtain certified mail lists that it seems to have understood to relate to SNODs. One of them is lacking information, including the specified date stamp and initials. But more importantly, Appeals' notes, as well as the lack of SNODs in the administrative record, make it unclear as to whether Appeals obtained the SNODs.[7] As noted *supra* Background Part VI, the Court has previously determined that an SNOD for the 2014 through 2016 tax years was properly mailed to petitioner, such that remand is not necessary for verification in that regard. However, it is still unclear whether SNODs for the 2011 through 2013 tax years were properly issued.

As part of the verification requirement, Appeals must also verify that the supervisory approval requirements of section 6751(b) have been satisfied with respect to any penalties to which they apply. *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 154 T.C. 68, 75 n.8, 76–77 (2020), *rev'd and remanded on other grounds*, 29 F.4th 1066 (9th Cir. 2022). The SNOD for tax years 2014 through 2016 reflects accuracy-related penalties under section 6662 and accordingly encloses a Civil Penalty Approval Form. However, this form is nowhere in the administrative record, and there is no indication in Appeals' case notes that it reviewed it to verify the propriety of the penalty assessment.

Moreover, the transcripts included in the administrative record reflect the assessment of penalties for petitioner's 2011 through 2013 tax years with codes corresponding to section 6662 penalties, *see* IRM 8.22.5.4.2.1.7(4) (Aug. 31, 2020), consistent with the indication in the examination-related documents that accuracy-related penalties would be imposed. However, there is again no indication of a penalty approval in the administrative record, nor any indication in Appeals' case notes nor anywhere else in the record that it reviewed such an approval to verify the propriety of the penalty assessment.

---

[7] As noted *supra* note 5, the undated Form 4549B in the administrative record that respondent's Motion points to as the SNOD is not the same Form 4549–B, dated March 6, 2020, included with the SNOD that petitioner received.

**[\*21]** Given the foregoing, the Court cannot conclude that Appeals undertook appropriate verification of the assessments. *Cf. Pfetzer v. Commissioner*, T.C. Memo. 2021-145, at *12 (not sustaining Appeals' determination given that the record did not include SNODs or USPS Forms 3877); *Smith v. Commissioner*, T.C. Memo. 2021-29, at *37 (not sustaining Appeals' determination with respect to a penalty for which Appeals abused its discretion in concluding that section 6751(b)(1) had been satisfied), *aff'd*, No. 22-70051, 2023 WL 4418215 (9th Cir. July 10, 2023); *Wong v. Commissioner*, T.C. Memo. 2020-32, at *9–10, *10 n.2 (concluding that Appeals had verified proper assessment of the penalties, despite the failure of the administrative record filed with the Court to include a Civil Penalty Approval Form, given that Appeals' declaration mentioned review of the form and the form was eventually submitted with the Commissioner's motion for summary judgment). Accordingly, this Court will remand this case to Appeals to ensure that the verification requirements of sections 6320 and 6330 are satisfied.

### B. *Issues Petitioner Raised*

A taxpayer may raise any relevant issue at a CDP hearing, including challenges to the appropriateness of collection actions and requests for collection alternatives. *See* §§ 6320(c), 6330(c)(2)(A). As discussed *supra* Discussion Part II, petitioner disputes his underlying liabilities. Petitioner also disputes the computation of his RCP and, in addition to submitting an OIC, made a request to the Second AO for an IA.

#### 1. *Underlying Liabilities*

The Second AO's apparent reliance on transcripts to consider the history of petitioner's disputes of the tax liabilities and the Second AO's statements in his notes about petitioner's purportedly not even disputing those liabilities raise doubts about Appeals' consideration of whether petitioner had a prior opportunity to dispute the underlying liabilities. And, for the reasons discussed *supra* Discussion Part II, this Court cannot conclude that petitioner had such an opportunity. Accordingly, on remand, Appeals must appropriately consider the question, and, if it determines that petitioner did not have such an opportunity, review the underlying liabilities as requested by petitioner.

#### 2. *Computation of RCP*

Petitioner argues that his "equity in his current personal residence and other assets is not as high as stated by the Commissioner"

[*22] and that he "is entitled to be heard on the issue of a fair and impartial valuation of his assets." He asserted to the Second AO that Collection should not have used $15,827 as the value for his business bank account and unhelpfully referenced a new enclosed personal bank account statement. Presumably, petitioner would prefer that Collection use the lower value for the business bank account reflected on his Form 433–A (OIC) and the penultimate bank statement that he submitted to Collection.

The IRM permits the IRS to use the amount of cash listed on Forms 433–A (OIC) and 433–B (OIC) for the amount of cash in the taxpayer's bank account. *See* IRM 5.8.5.7(1) and (2) (Sep. 24, 2021). However, it also instructs a reviewer to review statements for six months for nonwage earners, IRM 5.8.5.7(3), and in the event of substantial differences between Form 433 amounts and bank statements, to adjust the amount after discussion with the taxpayer, if applicable, IRM 5.8.5.7(4). And it suggests that the most recent account balance could be the most relevant number, *cf.* IRM 5.8.5.7(5), subject to adjustments to account for potentially dissipated funds, *see* IRM 5.8.5.7(6). Accordingly, it was consistent with the IRM for Collection to use the average balance of the checking account over the preceding six months, which was also much closer to the last statement balance of the account, rather than the minimum balance over that period cherrypicked by petitioner. And in disputing the amount taken into account with respect to his bank accounts, petitioner did not assert a change in circumstances requiring a completely new analysis of his RCP. Accordingly, it was also consistent with the IRM for the Second AO to consider the information provided to Collection rather than allowing petitioner to selectively (and without relevant documentation) update information that was not considered outdated under IRM standards. *Cf.* IRM 8.22.7.4(1) (Aug. 26, 2020) (prescribing a referral to Collection if a taxpayer provides a new collection information statement requiring verification); IRM 8.22.4.2.1(5) (May 12, 2022) (providing for Appeals to "[r]eview Collection case actions and decisions"); IRM 5.15.1.2(5) (Nov. 22, 2021) (advising that new information should be obtained if financial information is more than 12 months old). Appeals does not abuse its discretion in following IRM guidelines in evaluating a collection alternative. *See Thompson v. Commissioner*, 140 T.C. 173, 189 (2013). Therefore, the Court does not find an abuse of discretion in the analysis of petitioner's business bank account.

Given petitioner's dispute of the values assigned by Collection to the Sable Trail and the Sawgrass Walk properties, the Second AO

**[\*23]** adjusted the values used for those properties to those determined for property tax appraisal purposes, as reflected on the printouts that petitioner submitted. Because petitioner raised no dispute with respect to the out of state property taken into account by Collection, the Second AO apparently used the same computation with respect to that property as Collection. As laid out below, the recomputed net equity in the real properties would have been $433,927, which, when added to the value used for petitioner's business bank account and the net future income amount determined by Collection, would yield an RCP of $452,814, higher than the $452,334 determined by the Second AO. Accordingly, this Court finds no abuse of discretion in the valuations used.

| Property | Fair Market Value Used | Quick Sale Amount (80%) | Encumbrance Amount | Net Equity Amount |
|---|---|---|---|---|
| Sable Trail | $268,900 | $215,120 | $145,138 | $69,982 |
| Sawgrass Walk | 598,700 | 478,960 | 215,775 | 263,185 |
| Out of State | 125,950 | 100,760 | -0- | 100,760 |
| **Total Net Equity** | | | | **433,927** |

Notwithstanding that petitioner's assertions before this Court appear to focus on valuation, he could also be understood to raise the same disputes that he raised before Appeals, simply conflating value with equity. In his submission to the Second AO, petitioner suggested that none of the value of the Sawgrass Walk property should have been taken into account, as a result of its ownership by his business. However, IRM guidelines require amounts that a taxpayer can obtain with respect to his business to be taken into account. *See generally* IRM 5.8.5.17 (Mar. 23, 2018) (providing guidelines for valuing an ongoing business "owned individually" versus valuing its underlying property for purposes of the RCP computation); *see also* IRM 5.8.5.15 (Sep. 24, 2021) (providing guidelines for adjusting the RCP computation with respect to business assets that are essential for the production of income). Accordingly, it was not an abuse of discretion for the Second AO to take into account the amount determined with respect to the Sawgrass Walk property in computing petitioner's RCP. *Cf. Estate of Baumgardner v. Commissioner*, T.C. Memo. 2024-80, at \*21–23 (similarly concluding that it was appropriate for Appeals to take into account the value of non-income-producing business assets, given the IRM).

In his submission to the Second AO, petitioner suggested that only half or potentially none of the value of the Sable Trail property should have been taken into account, as a result of its co-ownership. The printout that the Second AO relied on for valuation suggests that the

[*24] property was jointly owned, as petitioner's Form 433–A (OIC) also indicates. Nevertheless, the Second AO apparently declined to consider whether the amount taken into account with respect to petitioner should be limited to half of the value, as suggested by the IRM. *See* IRM 5.8.5.5(1) (Sep. 24, 2021) (indicating that the equity in jointly owned assets should be allocated equally between the owners); IRM 5.8.5.13(6) (Sep. 24, 2021) (providing similarly, with the possibility of further reduction, for real estate held as a tenancy by the entirety). In doing so, the Second AO seems to have relied on both the fact that petitioner indicated on his Form 12153 that he was single and the fact that petitioner did not provide a deed showing co-ownership. However, given that there is no indication that the Second AO requested a deed as corroboration for the property records that petitioner already understood him to have relied upon, this Court cannot conclude that the Second AO did not abuse his discretion in not considering whether an adjustment to the amount petitioner was required to take into account with respect to the Sable Trail property was warranted. Accordingly, on remand, Appeals must consider the amount appropriately taken into account with respect to the Sable Trail property for purposes of determining petitioner's RCP.

3. *Consideration of IA*

In the Response, petitioner also notes that he attempted to propose an IA on multiple occasions and was rebuffed by the Second AO. The IRM indicates that IAs should generally not be allowed in lieu of full or partial payment if taxpayers have the means to pay from income or equity in assets. *See* IRM 5.14.1.2(1) (Mar. 31, 2023); *see also* IRM 8.22.4.2.1(4) (referring to IRM 5.14 for consideration of IAs in a CDP hearing). In analyzing a taxpayer's financial condition, the IRS considers, among other things, equity in encumbered assets. *See* IRM 5.15.1.3(2)(d) (Aug. 29, 2018). If a taxpayer has equity in assets, including equity in real property, that could be used to fully or substantially satisfy a liability, the IRS is generally to explore with the taxpayer the possibility of liquidating or borrowing against those assets. *See* IRM 5.14.1.4(5) (Mar. 31, 2023). For additional guidance, the IRM refers to IRM 5.15.1.31(3) (July 24, 2019), which states that "[i]n certain situations, . . . the taxpayer should be asked to secure a loan, or sell the real estate."

The Second AO focused on a single statement in the IRM indicating that he should consider a taxpayer's equity in assets among "all relevant facts," *see* IRM 8.22.7.5, and concluded from it that he was

[*25] required to reject the possibility of an IA if the taxpayer had some ability to pay. In so doing, he not only ignored other relevant facts, but he also ignored the much more specific instructions in the IRM about how to address equity in assets in considering an IA. And he did so despite specific instructions to research the relevant Collection guidelines to "[e]valuate any offers of collection alternatives by the taxpayer." IRM 8.22.4.2.1(4) and (5).

The IRM indicates that if a taxpayer is unable to borrow against his residence, the appropriate resolution may be to reject the taxpayer's offer based on the RCP and file an NFTL. *See* IRM 5.8.5.13(5) (final example). And the Court has specifically held that Appeals does not abuse its discretion by rejecting an IA if a taxpayer refuses to borrow against or liquidate assets to satisfy tax liabilities. *See Scanlon v. Commissioner*, T.C. Memo. 2018-51, at *23–24; *Tillery v. Commissioner*, T.C. Memo. 2015-170, at *17; *McCarthy v. Commissioner*, T.C. Memo. 2013-214. However, there is no indication in the record that the Second AO even considered whether petitioner could borrow against his assets or suggested to petitioner that he could explore it, as the IRM instructs; instead, the Second AO seemed to confirm petitioner's understanding that the IRS would require him to sell his real property. The Court has held that an Appeals officer abused her discretion when she refused to consider an IA after a taxpayer tried and was unable to borrow against real property because the Appeals officer believed that liquidation was required. *See Kirkley v. Commissioner*, T.C. Memo. 2020-57, at *13–14. Accordingly, this Court cannot conclude that the Second AO's failure to give petitioner an opportunity to borrow against his equity before summarily denying him an IA was not an abuse of discretion. On remand, Appeals must consider whether an IA is warranted, taking into account the relevant provisions of the IRM.

C.    *Balancing Analysis*

Appeals concluded that the proposed collection actions balanced the need to collect the amounts due with petitioner's concern that the collection action be no more intrusive than necessary. *See* §§ 6320(c), 6330(c)(3)(C). However, the Court has concluded that an Appeals officer that came to such a conclusion in reliance on a misinterpretation of the IRM, as the Second AO seems to have, abused his discretion. *See Kirkley*, T.C. Memo. 2020-57, at *13–14. Moreover, Appeals' assertion that the Levy NOD's conclusion was supported by petitioner's failure to provide requested documents to support arguments made during the hearing is belied by the lack of any indication in the record that the Second AO

**[\*26]** asked for any further documentation during the hearing, other than possibly third-party appraisals and mortgage statements, which petitioner would have understood as unnecessary given his dispute. Accordingly, this Court cannot conclude the Second AO did not abuse his discretion.

IV. *Conclusion*

Petitioner certainly did not facilitate the consideration of his case by Appeals by (1) being imprecise about the basis for his dispute of his underlying liabilities on his Form 12153, (2) making off-base complaints about the IRS's collection actions leading up to the CDP hearing requests, (3) submitting multiple nonprocessable OICs, and (4) ultimately submitting an OIC with an amount untethered from his ability to pay. However, he did (1) suggest to the Second AO that he had not timely received the SNOD that purportedly provided him a prior opportunity to dispute his underlying liabilities for the 2014 through 2016 tax years, (2) provide a full complement of supplemental information, including relevant documentation requested by the Second AO, and (3) consistently maintain understandable disputes of his underlying liabilities and the accounting for his real property in the RCP computation. And although some of petitioner's disputes were groundless, the administrative record suggests that the Second AO may have disregarded multiple provisions of the IRM and thereby failed to properly (1) determine whether petitioner was entitled to dispute his underlying liabilities, (2) verify that the requirements of any applicable law or administrative procedure were met with respect to the assessments, (3) determine petitioner's RCP, and (4) evaluate petitioner's request for an IA. Accordingly, this Court cannot conclude that Appeals did not abuse its discretion. Therefore, this Court will remand the case to Appeals for a supplemental administrative hearing in accordance with this Opinion and for the issuance of a supplemental notice.

To reflect the foregoing,

*An order will be issued remanding the case to Appeals for further consideration.*